# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CANON, INC. | |
| | CIVIL ACTION NO. 2:18-cv-00546 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| TCL ELECTRONICS HOLDINGS LTD., TCL CORPORATION, SHENZEN TCL NEW TECHNOLOGIES CO. LTD., TCL KING ELECTRICAL APPLIANCES (HUIZHOU) CO., LTD., TCL KING ELECTRONICS (CHENGDU) CO., LTD., TCL KING ELECTRICAL APPLIANCES (NANCHANG) CO., LTD., TCL TONGLI ELECTRONICS (HUIZHOU) CO., LTD., TONLY ELECTRONICS HOLDINGS LTD. | |
| Defendants. | |

**PLAINTIFF CANON'S OPPOSITION TO DEFENDANT TCL
ELECTRONICS HOLDINGS LTD.'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2)**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL BACKGROUND AND RELEVANT FACTS .......................................... 2

III.  LEGAL STANDARDS ......................................................................................... 5

IV.  ARGUMENT ..................................................................................................... 9

  A.  Canon's Complaint Made a Prima Facie Showing that this Court Has Personal Jurisdiction over Defendant. .................................................................................... 9

  B.  Facts Alleged in Defendant's Motion and the Wu Declaration are Inconsistent with Defendant's Own Prior Representations Made Before this Court and Its Own Press Release and are Therefore Not Credible ............................................................................ 12

  C.  Canon's Amended Complaint Further Reinforces Factual Allegations Showing Exercising Personal Jurisdiction over Defendant is Proper ...................................... 15

  D.  Defendant's Reliance on *B/E Aerospace* is Misplaced ...................................... 17

  E.  Defendant's Alleged Jurisdictional Challenge Should Not Stay This Case As Defendant Has Admitted It (and Therefore TCL) Has Engaged In the Infringing Acts at Issue Here ...... 18

  F.  Defendant's Series of Inconsistent Prior Statements Warrant Jurisdictional Discovery .. 20

V.  CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3G Licensing, S.A. v. HTC Corp.*,
   No. CV 17-83-LPS-CJB, 2017 WL 6442101 (D. Del. Dec. 18, 2017) ...........................16, 19

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012).................................................................................................9

*AGIS Software Development LLC, v. HTC Corp.*,
   No. 2:17-CV-514-JRG, 2018 WL 4680557 (E.D. Tex., Sept. 28, 2018) ...........................6, 10

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008)..................................................................................................7

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018)................17, 18

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   No. 2:16-cv-01417-JRG-RSP, 2019 WL 354883 (E.D. Tex. Jan. 18, 2019) .........................18

*Barry v. Medtronic, Inc.*,
   914 F.3d 1310 (Fed. Cir. 2019)............................................................................................8, 17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994)...............................................................................................7, 10

*Blitzsafe Texas, LLC, v. Bayerische Motoren Werke AG*,
   2:17-CV-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) ...........................................9

*Cardsoft, Inc. v. Verifone Holdings, Inc.*,
   No. 08-098, 2009 WL 361069 (E.D. Tex. Feb. 10, 2009)......................................................11

*Cohan v. Mun. Leasing Sys., Inc.*,
   379 F. Supp. 1022 (N.D. Ill. 1974) ................................................................................. *passim*

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*,
   963 F.2d 90 (5th Cir. 1992) .................................................................................................5, 15

*Elecs. for Imaging, Inc. v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003)............................................................................................6, 12

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   No. 2:16-CV-134-JRG-RSP, 2017 WL 970383 (E.D. Tex., Mar. 1, 2017) ...........................11

*Graftech Int'l Holdings, Inc. v. GC&S Co., Ltd.*,
   No. 2:12-CV-720-JRG, Dkt. No. 39, 2014 WL 12591876 (E.D. Tex. Apr. 8,
   2014) .......................................................................................................................7, 8, 18, 20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re HTC Corp.*,
    889 F.3d 1349 (Fed. Cir. 2018)............................................................................19

*In re: HTC Corp.*,
    No. 2018-130, 2018 WL 4442163 (Fed. Cir. Sept. 6, 2018) ..................................19

*HTC Corp. v. 3G Licensing, S.A.*,
    139 S. Ct. 1271 (2019)...........................................................................................19

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)....................................................................... *passim*

*Patterson v. Dietze, Inc.*,
    764 F.2d 1145 (5th Cir. 1985) .................................................................................9

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)..........................................................................8, 17

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005)...............................................................................6

*Viam Corp. v. Iowa Export-Import Trading Co.*,
    84 F.3d 424 (Fed. Cir. 1996)...................................................................................7

*Wapp Tech. Limited Partnership, et. al. v. Micro Focus Int'l, PLC*,
    No. 4:18-CV-469, slip op. (E.D. Tex. Dec. 20, 2018)................................6, 15, 21

*World-Wide Volkswagon Corp. v. Woodson*,
    444 U.S. 286 (1980).................................................................................................6

## Other Authorities

Fed. R. Civ. P. 4(d)(1).........................................................................................................4

Fed. R. Civ. P. 15................................................................................................................4

## I.    INTRODUCTION

Plaintiff Canon Inc. ("Canon") respectfully submits this memorandum in opposition to Defendant TCL Electronics Holdings Ltd.'s ("Defendant" or "TCL Electronics") Motion to Dismiss Canon's Complaint for Lack of Personal Jurisdiction (the "Motion"). Dkt. No. 19.

The Motion should be denied because (1) Canon's original complaint (the "Complaint") made a *prima facie* showing that personal jurisdiction over Defendant exists by pleading facts based on and consistent with Defendant's prior admissions before this Court in *Personalized Media Communications, LLC, v. TCL Corp.,* No. 2:17-CV-433-JRG that it engages in infringing acts at issue here and (2) the Motion and the declaration of Yang Wu submitted in support of the Motion (the "Wu Decl.") contradict Defendant's previous admissions before the Court and are, therefore, not credible and insufficient to meaningfully controvert Canon's well-pled allegations. Moreover, Canon's First Amended Complaint (the "Amended Complaint") made additional factual allegations that reinforced Canon's *prima facie* showing of personal jurisdiction over Defendant.  For these reasons, this case is ready to proceed on merits against Defendant.

Essentially, Defendant's Motion is an attempt to avoid litigating this case in this District. Indeed, Defendant's counsel expressly invited Canon to litigate in California instead.  *See* Declaration of Nobumasa Hiroi in support of Canon's opposition to the Motion (the "Hiroi Decl.") Ex. 1 at 1[1] (Email from Mr. Thomases to Mr. Chaikovsky dated May 6, 2019) ("We urge Canon to consider California as a proper venue").  Defendant's attempt is inappropriate because Defendant is a foreign entity that can be sued in any district where personal jurisdiction exists and is subject to this Court's personal jurisdiction as demonstrated below.  Thus, Canon's choice to enforce its patent rights against Defendant in this District should be honored.

---

[1] Hereafter all references to "Ex." are exhibits attached to Hiroi Decl.

Alternatively, in light of Defendant's multiple contradicting allegations, jurisdictional discovery here is warranted as relevant evidence is in Defendant's and the other TCL defendants' possession, custody or control.  Furthermore, Canon requests that the Court deem this case ready for scheduling conference against Defendant without having to wait for the rest of the newly named defendants to respond to the Amended Complaint because the jurisdictional discovery on Defendant will likely clarify Defendant's numerous inconsistent statements regarding its relationship with the other named defendants and streamline the entire case, regardless of whether these other named defendants make appearance immediately by waiving the service of process or insist on being served via Hague Convention, which can easily take an year or longer.

## II.    PROCEDURAL BACKGROUND AND RELEVANT FACTS

Canon filed the Complaint against Defendant on December 27, 2018 alleging that Defendant has infringed and continues to infringe five Canon patents (the U.S. Patents Nos. 7,746,413, 8,078,767, 8,346,986, 8,713,206, 7,810,130) (collectively "the Patents-in-Suit").  Dkt. No. 1.  In the Complaint, Canon alleged that this Court has personal jurisdiction over Defendant based, inter alia, on Defendant's direct and/or indirect infringement within the State of Texas:

> Upon information and belief, Defendant has committed acts of infringement within the State of Texas and this judicial District by, *inter alia*, directly and/or indirectly making, selling, offering for sale, importing, and/or using products that infringe one or more claims of Canon's patents asserted herein.  . . . Defendant also has a number of subsidiaries that Defendant directs and controls that upon information and belief are involved in making, selling, offering for sale, and/or importing into the United States the infringing products.

*Id*. at ¶ 4.  Similarly, Canon also alleged that the personal jurisdiction is based on Defendant's placing the accused products into the stream of commerce:

> Furthermore, upon information and belief, Defendant has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by residents of this judicial District, including by directly and indirectly working with distributors,

and other entities located in the State of Texas, to ensure the accused products reach the State of Texas and this judicial District.

*Id*. at ¶ 5.  Furthermore, Canon alleged that Defendant's commercial websites further support exercise of jurisdiction over Defendant:

> Defendant also maintains commercial websites accessible to residents of the State of Texas and this judicial District, through which Defendant promotes and facilitates sales of the infringing products.  For example, Defendant's website https://www.tclusa.com directs consumers in the United States, including those in the State of Texas and this judicial District, to purchase Defendant's infringing television systems from online stores such as Amazon, as well as brick-and-mortar stores located in this judicial District, including Target and Walmart (see Figure 1, below).  Defendant's infringing television systems are also sold by Best Buy and Sam's Club, which have stores in this judicial District.

*Id*. at ¶ 6.

Because Defendant is a foreign entity, Canon requested and obtained from Defendant a waiver of service of summons and filed the executed waiver of service on January 4, 2019.  Dkt. No. 8.  In exchange for the waiver of service, Defendant obtained 90 days to respond to Canon's complaint.  *Id.*  On April 23, 2019, nearly four months after the waiver of service was executed, Defendant filed this Motion challenging the Court's personal jurisdiction over Defendant.  In the Motion, Defendant alleges that it is merely a "foreign holding company" and "does not make, use, sell, offer for sale, import or export the accused TV products, or otherwise introduce them into the stream of commerce."  Motion at 1.  Defendant further alleges that it "does not exert control over its subsidiaries."  *Id.* at 2.  Instead, Defendant admits that its U.S. subsidiary TTE Technologies Inc. ("TTE") is importing into the United States and sells the accused products.  *Id.* at 3.  The Motion is silent about whether and to what extent any other affiliated companies are involved in activities accused of infringement in this action.

Under the Rule 15 of the Federal Rules of Civil Procedure, Canon amended the Complaint on April 25, 2018 with additional factual allegations reinforcing its bases to assert

personal jurisdiction over Defendant, and named additional seven TCL entities[2] that it had reasonable bases to believe are involved in manufacturing and introducing the accused products into the stream of commerce to reach this District of Texas.   *See, e.g.,* Dkt. No. 22, ¶ 67 ("Defendants maintain a 'vertically integrated supply chain' and direct and authorize third parties, including TTE, to use, sell and/or import to the United States products, including the '413 Accused Products, through the 'vertically integrated supply chain'"); *see also id*. at ¶¶ 65, 66.  Canon is currently seeking waiver of service from these entities pursuant to Fed. R. Civ. P. 4(d)(1) while also attempting to effectuate formal service via Hague Convention.

Shortly after Defendant filed its Motion, Canon contacted Defendant's counsel in order to determine whether the parties could reach an amicable resolution of the jurisdictional issue so that parties could avoid unnecessary motion practice and reduce the burden on the Court.  Canon suggested that perhaps the parties could enter into an acceptable stipulation as to which parties should proceed in this case, much like the one Defendant and certain other TCL entities entered into in *American Patents LLC v. TCL Corp.,* No. 4:18-CV-767-ALM, where certain TCL entities would stipulate to be bound by the finding of liability and to satisfy any damages when the infringement is found.  *See* Ex. 1 at 4-5 (Email from Mr. Chaikovsky to Mr. Thomases dated May 1, 2019); *see also* Ex. 2 (Stipulation, in the form of a Joint Motion, entered into in *American Patents LLC v. TCL Corp.* case).  Notably, *American Patents* involves alleged infringement against the same RokuTVs which are accused of infringement in this action.  *See and compare* Ex. 12 (American Patents LLC's complaint to Defendant) at 6 with Dkt. No. 1 at 7-8 (listing the

---

[2] Those additional TCL entities are: TCL Corporation, Shenzen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL King Electronics (Chengdu) Co., Ltd., TCL King Electrical Appliances (Nanchang) Co., Ltd., TCL Tongli Electronics (Huizhou) Co., Ltd., and Tonly Electronics Holdings Ltd.

accused products in this case).  In particular, the Stipulation states that "TCL King Electrical

Appliances (Huizhou) Co. Ltd. has been involved in manufacturing and importing the accused

TV products" *and* "TTE Technology, Inc. has been involved in selling or offering for sale the

accused TV products."  *See* Ex. 2 (*American Patents LLC v. TCL Corp.*, No. 4:18-CV-767-ALM

Dkt. No. 46, Joint Motion to Substitute Parties and to Dismiss Certain Defendants without

Prejudice) at 1.  In response to Canon's proposal, however, Defendant's counsel maintained that

he does not represent other TCL entities, the corporate hierarchy of Chinese corporations

generally makes it difficult to determine who the correct contacts are and how to obtain correct

information regarding our allegations in the Complaint, and declined to enter into the proposed

stipulation.  *See* Ex. 1 at 4-5 (Email from Mr. Chaikovsky to Mr. Thomases dated May 1, 2019

memorializing a previous phone call between Mr. Chaikovsky and Mr. Thomases); *see also id.* at

3 (Email dated May 2, 2019 from Mr. Thomases to Mr. Chaikovsky within the same email

thread, not disputing the above summary of Mr. Thomases' statements made to Mr.

Chaikovsky).  These statements were made more than four months after the Complaint was filed

and more than two months after the Stipulation in *American Patents* was filed with this Court.

## III.    LEGAL STANDARDS

"The court may resolve a jurisdictional issue by reviewing pleadings, affidavits,

interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination

thereof."  *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.,* 963 F.2d 90, 95 (5th Cir.

1992).  And "there is no strict prohibition on a court's consideration of hearsay" in connection

with a motion to dismiss for lack of personal jurisdiction. *Nuance Commc'ns, Inc. v. Abbyy

Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (citing *Campbell Pet Co. v. Miale*, 542

F.3d 879, 889 (Fed.Cir.2008)).

Further, in deciding a motion to dismiss for lack of personal jurisdiction, "the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff" and "accept the uncontroverted allegations in the plaintiff's complaint as true." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282-83 (Fed. Cir. 2005); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  Further, any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists.  *See Wapp Tech. Ltd. Partnership, v. Micro Focus Int'l, PLC,* No. 4:18-CV-469, slip op. at 2 (E.D. Tex. Dec. 20, 2018) (Dkt. No. 17) (internal quotations omitted)).  Attached hereto as Ex. 11.  "When a district court is confronted with two contradictory factual allegations…, the court must assume, for the purpose of the motion attacking jurisdiction, that the facts related in the plaintiff's affidavit and complaint are true unless they are clearly and effectively controverted by live sworn testimony and the production of competent evidence before the Court." *Cohan v. Mun. Leasing Sys., Inc.*, 379 F. Supp. 1022, 1027 (N.D. Ill. 1974) (citing *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971), *Woodworkers Tool Works v. Byrne*, 191 F.2d 667 (9th Cir. 1951) and *Kesler v. Schetky Equipment Corp.*, 200 F.Supp. 678 (N.D. Cal. Dec. 7, 1961)).  In other words, defendant's motion to dismiss that fails to meaningfully controvert plaintiff's well-pled allegations is denied. *AGIS Software Development LLC, v. HTC Corp.*, No. 2:17-CV-514-JRG, 2018 WL 4680557, at *5 (E.D. Tex., Sept. 28, 2018) (Gilstrap, J.).

Plaintiffs' well-pled allegations that defendants "deliver[] [the accused] products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" establish a *prima facie* showing of defendants' personal jurisdiction.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298 (1980).  The Court applies both the Brennan

test and the O'Connor test to determine whether personal jurisdiction should be established under the stream of commerce theories. *Graftech Int'l Holdings, Inc. v. GC&S Co., Ltd.,* No. 2:12-CV-720-JRG, Dkt. No. 39, 2014 WL 12591876, at * at *5 (E.D. Tex. Apr. 8, 2014) (Gilstrap, J.). "Under the O'Connor test, '[a]dditional conduct of the defendant,' which 'may indicate an intent or purpose to serve the market in the forum State,' must be shown to establish minimum contacts." *Id.* at 6 (quoting *Asahi,* 480 U.S. at 112). But under the Brennan test, "'[a] defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity'" and "'[a]s long as a participant in this process is aware that the final product is being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise.'" *Id.*.

Plaintiffs' well-pled allegations that defendants "purposefully directed [their] activities at residents of the forum" and plaintiffs' claims "arise out of or relate to those activities" also establish a *prima facie* showing of personal jurisdiction over the defendants. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) (internal citations omitted). Purposefully shipping an accused product into the forum state through an established distribution channel is sufficient to establish specific jurisdiction *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). A foreign corporation's marketing agreement and practices with its exclusive North America distributor establishes "a regular distribution channel" through which the foreign corporation is deemed to have purposefully directed its activities at the forum state. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996).

A holding company can be vicariously liable for its subsidiary's infringement.  *See*

*Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (a corporation is "liable for

infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or

contracts with another to perform one or more steps of a claimed method" or "infringes

vicariously by profiting from direct infringement if that actor has the right and ability to stop or

limit the infringement.") (quoting *Akamai V,* 797 F.3d at 1023) (internal quotations omitted).  A

holding company can also be liable for actively inducing others, including a subsidiary to

infringe a patent.  *See Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (a

corporation can be liable for induced infringement if the corporation had an intent to induce

others to act that constituted infringement and knew or should have known that such act would

constitute direct infringement).  Thus, exercising personal jurisdiction over a holding company is

proper when plaintiff pleads sufficient facts to show that the holding company is vicariously

liable for and/or induced its subsidiaries' infringement with the knowledge that the accused

products will be put into the stream of commerce.

To determine existence of personal jurisdiction, courts can also order parties to conduct

jurisdictional discovery.  Plaintiffs "need only make a prima facie showing of jurisdiction"

before conducting jurisdictional discovery.  *Nuance*, 626 F.3d at 1231; *see also, Graftech*, 2014

WL 12591876 at *3, 7.  "[D]iscovery should ordinarily be granted where pertinent facts bearing

on the question of jurisdiction are controverted."  *Nuance,* 626 F.3d at 1235-6 (finding that the

district court abused its discretion in dismissing a foreign defendant for lack of personal

jurisdiction without conducting jurisdictional discovery).  All plaintiffs need to show in order to

take jurisdictional discovery is a "preliminary showing of jurisdiction," which is "something less

than a *prima facie* showing, and requires 'the presentation of factual allegations that suggest with

reasonable particularity the possible existence of the requisite contacts.'" *Graftech,* 2014 WL 12591876, at \*7 (quoting *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005).  "[J]urisdictional discovery is within the trial court's discretion and will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir. 1985) (internal citation omitted).

## IV.    ARGUMENT

### A.    Canon's Complaint Made a Prima Facie Showing that this Court Has Personal Jurisdiction over Defendant.

Canon's factual allegations in the Complaint are sufficient to make *prima facie* showing of personal jurisdiction over Defendant.  Particularly, Canon asserted facts showing, *inter alia,* that Defendant (1) places accused products into the stream of commerce with the expectation that they will reach the State of Texas, (2) directly or indirectly sells the accused products in this district, (3) maintains websites that offer to sell the accused products in this district, (4) directs and controls others, including its wholly-owned subsidiaries to make, use, offer for sale, sell and/or import into the United States (including this district) the accused products.  *See* Dkt. No. 1 at ¶¶ 4-6.

Each one of these factual allegations, if accepted as true, is independently sufficient to make a *prima facie* showing of personal jurisdiction over Defendant. *See, e.g., Blitzsafe Texas, LLC, v. Bayerische Motoren Werke AG,* 2:17-CV-418-JRG, 2018 WL 4849345, at \*3 (E.D. Tex. Sept. 6, 2018) (Gilstrap, J.) (The foreign defendant "place[d] the accused products into the stream of commerce with knowledge that, through [the foreign defendant]'s established distribution to [its U.S. subsidiaries], the accused vehicles will be sold in Texas. This knowledge alone is more than sufficient to meet the requirements of *Beverly Hills Fan.*"); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363–64 (Fed. Cir. 2012) ("we [] apply our precedent that

interprets the Supreme Court's existing stream-of-commerce precedents. That precedent is *Beverly Hills Fan Co. v. Royal Sovereign Corp.*"); *see also AGIS Software Development LLC,* 2018 WL 4680557, at *5 (E.D. Tex., Sept. 28, 2018) (finding personal jurisdiction over a Korean defendant under *Beverly Hills Fan*'s stream-of-commerce theory).

Defendant argues that these factual allegations of Canon are untrue.  *See*, *e.g.*, Motion at 1.  But Canon's allegations are based on and consistent with Defendant's prior admissions before the Court.  For example, Defendant previously represented to this Court in *Personalized Media Communications, LLC, v. TCL Corp.,* No. 2:17-CV-433-JRG that it (under its previous name, TCL Multimedia Technology Holding Ltd.) and its parent TCL Corporation sell "televisions in the United States" where the majority of accused televisions in that case are also accused in this case.  Ex. 3 (Defendant's answer to Personalized Media Communications, LLC's Amended Complaint (Dkt. No. 27) at 2; *see also and compare* Ex. 4  (Exhibit A to Personalized Media Communications's Amended Complaint titled "Example Accused Digital Television) *with* Dkt. No. 1 at 7-8 (listing the accused products in this case).  Accordingly, Defendant's contradictory factual allegations are not "competent evidence" sufficient to "effectively controvert[]" Canon's well-pled allegations.  *Cohan*, 379 F. Supp. At 1027 ("When a district court is confronted with two contradictory factual allegations…, the court must assume, for the purpose of the motion attacking jurisdiction, that the facts related in the plaintiff's affidavit and complaint are true unless they are clearly and effectively controverted by live sworn testimony and the production of competent evidence before the Court.").

Similarly, Defendant's argument that it does not own www.tclusa.com referenced in the Complaint is a mere red herring.  Motion at 1.  It is undisputed that Defendant maintains a website, http://electronics.tcl.com.  And through this website, Defendant offers to sell the

accused products as follows.  The website provides images of the TCL TV products worldwide, and, when those images are clicked, directs the customers to www.tclusa.com where customers can purchase the accused products.  Ex. 5 (http://electronics.tcl.com/en/product/info.do?method=findContent&mappingName=landing). Such interactive websites are sufficient to establish a *prima facie* showing of personal jurisdiction over a foreign holding company.  *See*, *e.g., Godo Kaisha IP Bridge 1 v. Broadcom Ltd.,* No. 2:16-CV-134-JRG-RSP, 2017 WL 970383, at *7 (E.D. Tex., Mar. 1, 2017) (Gilstrap, J.); *Cardsoft, Inc. v. Verifone Holdings, Inc.,* No. 08-098, 2009 WL 361069, at *1-2 (E.D. Tex. Feb. 10, 2009) (holding that a *prima facie* showing for the exercise of personal jurisdiction had been made over a foreign entity that alleged it was merely a holding company where the company advertised the accused products on its website).

This Court's decision in *Godo Kaisha* is particularly instructive.  In *Godo Kaisha,* the Court held that it has personal jurisdiction over two allegedly holding corporation defendants because they have "effectively maintained a web presence" that could be perceived by consumers as being engaged in acts accused of infringement in that case:

> [T]he Court finds that because Broadcom Ltd. and Avago Ltd. are supporting highly interactive websites such as www.broadcom.com, www.avagotech.com and www.avagotech-online.com, it would not be improper for GK to assert specific personal jurisdiction over Defendants. Regardless of whether Broadcom Ltd. or Avago Ltd. truly own the copyrights of (in the case of Broadcom Ltd.) or maintain (in the case of Avago Ltd.) their respective websites, like the Realtime and GSK cases, ***Defendants have effectively maintained a web presence in a manner in which there is no meaningful way for a customer to determine if Defendants are truly separate and apart from their domestic subsidiaries (partly because they identified and advertised themselves interchangeably or as related entities on their websites)***, thereby making the exercise of specific personal jurisdiction over them fair and reasonable.

*Godo Kaisha,* 2017 WL 970383, at *7 (adopting Magistrate Judge's Report and Recommendation to deny defendants' motion to dismiss).

11

Furthermore, at the very least, existence of such interactive websites strongly supports the need for jurisdictional discovery. *Nuance*, 626 F.3d at 1235-6 (holding that foreign holding company defendant's website that advertised accused products but did not directly sell them was supportive of granting jurisdictional discovery to confirm the extent of the holding company control over its U.S. subsidiary and involvement with the accused products).

Because Canon's Complaint provided factual allegations that are well grounded as demonstrated above, Canon has established a *prima facie* showing of personal jurisdiction over Defendant.

**B.     Facts Alleged in Defendant's Motion and the Wu Declaration are Inconsistent with Defendant's Own Prior Representations Made Before this Court and Its Own Press Release and are Therefore Not Credible**

The Motion fails to refute Canon's *prima facie* showing of personal jurisdiction over Defendant because it relies on allegations which flatly contradict Defendant's prior admissions made before this Court. Those self-contradicting allegations cannot effectively controvert the facts alleged by Canon and Canon's allegations should therefore be regarded as true. *Elecs. for Imaging,* 340 F.3d at 1349 (a court is required to "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the plaintiff's favor."); *Cohan*, 379 F. Supp. at 1027 ("When a district court is confronted with two contradictory factual allegations…, the court must assume, for the purpose of the motion attacking jurisdiction, that the facts related in the plaintiff's affidavit and complaint are true unless they are clearly and effectively controverted by live sworn testimony and the production of competent evidence before the Court.")[3]

---

[3] Defendant's argument that waiver of personal jurisdiction in one case is not effective in subsequent cases is not relevant to credibility of its allegations. Motion at 7.

For example, Defendant claims in its Motion and Wu Decl. that it does not make, use, sell, offer for sale, import, or export the accused TV products, or otherwise introduce them into the stream of commerce.  Motion at 5; Wu Decl. at ¶ 9.  But Defendant previously represented to this Court in *Personalized Media Communications, LLC, v. TCL Corp.,* No. 2:17-CV-433-JRG that it and its parent TCL Corporation sell "televisions in the United States" where the majority of accused televisions in that case are also accused in this case.  Ex. 3 (Defendant's answer to Personalized Media Communications, LLC's Amended Complaint (Dkt. No. 27) at 2; *see also and compare* Ex. 4  (Exhibit A to Personalized Media Communications's Amended Complaint titled "Example Accused Digital Television) and Dkt. No. 1 at 7-8 (listing the accused products in this case).  This statement is further contradicted by TCL's recent press release dated April 23, 2019 and available to consumers in this District as well as globally:

> About TCL Electronics [¶] Headquartered in China, ***TCL Electronics Holdings Limited (HKSE stock code: 01070) is one of the leading players in the global TV industry, and is engaged in the research and development, manufacturing and distribution of consumer electronic products***.  Through a new product-and-user-oriented business model that focuses primarily on a 'double +' strategy which includes 'smart + internet' and 'products + services' as the main direction, ***TCL Electronics strives to build a comprehensive ecosystem for Smart TVs*** that provides users with a superior experience with its smart products and services.

Ex. 6 ([Press release

http://electronics.tcl.com/UserFiles/File/IR/Press%20Releases/2019/ENG_TCL_2019Q1_Press%20Release_20190423_Final_Clean.pdf] at page 4 (emphasis added).

Besides, Ms. Wu is not an employee of Defendant or Defendant's parent corporation.  Rather, Ms. Wu is an employee of Defendant's wholly-owned subsidiary Shenzen TCL New Technology Co., Ltd..  Wu. Decl. at ¶¶ 1-2.  Her declaration is devoid of any explanation of how, as an employee of Defendant's subsidiary, she has sufficient knowledge regarding the role of

Defendant and its sister subsidiary, TTE, in designing, developing, manufacturing, selling, importing, and distributing the accused products.

If anything, Wu Decl. supports the fact that Defendant indeed controls its wholly-owned subsidiaries because Defendant directed its subsidiary's employee to provide the declaration in support of Defendant's Motion (since this declaration was submitted, Canon has amended the Complaint and named Shenzen TCL New Technology Co., Ltd. as one of the defendants).  This further casts a cloud over credibility of Defendant's representation that Defendant does not control TTE and other subsidiaries.

Defendant also claims here that its U.S. subsidiary, TTE "is the only TCL affiliated company that imports the Accused Products into the United States or sells them in the United States." Wu Decl. at ¶ 15.[4]  But Defendant's claim is contradicted by its own prior representation in *Personalized Media Communications, supra*, because Defendant represented in its answer that both Defendant and its parent TCL Corp. sell the accused products in the United States.  Similarly, Defendant previously represented to the Court that yet another TCL entity, "TCL King Electrical Appliances (Huizhou) Co. Ltd. has been involved in manufacturing and ***importing*** the accused TV products" *See* Ex. 2 (*American Patents LLC v. TCL Corp.*, No. 4:18-CV-767-ALM Dkt. No. 46, Joint Motion to Substitute Parties and to Dismiss Certain Defendants without Prejudice) at 1 (emphasis added).

This admission was further confirmed in TCL King and TTE's later submitted Answer. *See* Ex. 7 (Defendant's Amended Answer to American Patent's Amended Complaint)  at ¶ 7 ("TCL admits that TCL King Electrical Appliances (Huishou) Co. Ltd. manufactures and

---

[4] Defendant's apparent motive for this allegation is to insert the U.S. subsidiary based in California to seek transfer venue out of this Court.  See Ex. 1 at 3 (Email from Mr. Thomases to Mr. Chaikovsky dated May 2, 2019).

*imports* televisions into the United States") (emphasis added).  In other words, Defendant's allegation that TTE is the only entity that imports into the U.S. or sells the accused products in the U.S. is contradictory and not "competent evidence" sufficient to "effectively controvert[]" Canon's well-pled allegations.  *Cohan*, 379 F. Supp. At 1027.

Accordingly, these prior inconsistent admissions are sufficient to discredit Defendant's allegations in its Motion.  All factual conflicts should therefore be resolved in Canon's favor, and Defendant's Motion should be denied.  See Ex. 11, *Wapp v. Micro Focus*, slip op. at 2; *Cohan*, 379 F. Supp. at 1027.

### C.    Canon's Amended Complaint Further Reinforces Factual Allegations Showing Exercising Personal Jurisdiction over Defendant is Proper

The Motion should also be denied because Canon filed the Amended Complaint with additional factual allegations that reinforce Canon's *prima facie* showing of personal jurisdiction over Defendant.  *Command-Aire Corp*, 963 F.2d at 95 ("The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof.").

First, there is sufficient basis to reject Defendant's claim that it does not control its wholly-owned subsidiaries to engage in the alleged infringing acts.  The Amended Complaint pleads that Defendant maintains a "vertically integrated supply chain" and directs and authorizes third parties, including TTE, to make, use, sell and/or import to the United States the accused products.  *See* Motion at 2; *see also* Dkt. No. 22 at ¶¶ 67, 79, 103, 115, 139, 155, 179, 193, 217, 227.  It is undisputed that Defendant's wholly-owned US subsidiary, TTE, sells TCL branded TVs, and most (54 out of 57) TCL branded TVs that are currently sold on www.tclusa.com are accused of infringing Canon's patents-in-suit.  *See* Ex. 8 (https://www.tclusa.com/products/home-theater); Ex. 9 (https://www.tclusa.com/catalog/home-

theater); Dkt. No. 1 at 7-8 (listing the accused products in this case).  TTE does not sell any TVs other than the TCL branded TVs.  *Id.*  Where Defendant controls the "vertically integrated supply chain" for these accused TCL branded TVs and its US sales subsidiary TTE has no other TV products to sell, Defendant's claim of no control over TTE's infringing activity only rings hollow.

Second, Canon's Amended Complaint alleges that Defendant directs and controls its subsidiaries including TTE, drawing factual support from Defendant's annual report.  *See, e.g.,* Dkt. No. 1 ¶ 67 ("For example, according to TCL Electronics Holding Ltd.'s Annual Report (2018), 'Management monitors the results of the Group's operating segments separately for the purpose of making decisions about resources allocation and performance assessment' where the Group's operating segments include various third party subsidiaries of TCL Electronics Holding Ltd., including TTE.").  This statement supports Canon's argument that Defendant is not merely a holding company and does exercise direction and control over critical business activities of its subsidiaries by "resources allocation and performance assessment."[5]  These additional allegations support the stream of commerce theory of personal jurisdiction, direct infringement

---

[5] Judge Stark in the District of Delaware found similar facts satisfied the test for exercising personal jurisdiction over a Taiwanese parent company based on the company's Annual Report:

> In its 2015 Annual Report, HTC Corp. stated it "maintains a presence in all key markets, including the United States" and its "products are distributed across ... America[ ] ... through major carriers and local retail channels."  HTC Corp. further noted that it released particular smartphones in partnership with "US carrier Verizon."  The record also shows that HTC Corp.'s intent to serve the United States market has resulted in the accused products being sold in Delaware, including at numerous Best Buy, Sprint, and Verizon locations. HTC Corp's smartphones are also sold online through HTC America's website.

*3G Licensing, S.A. v. HTC Corp.*, No. CV 17-83-LPS-CJB, 2017 WL 6442101, at *3 (D. Del. Dec. 18, 2017) (internal citations omitted)

by Defendant, Defendant's vicarious liability for third party's (including subsidiaries) infringing

acts and active inducement of infringement.

Third, Defendant's argument regarding piercing corporate veil is only a red herring.

Motion at 8-10.  Canon's Amended Complaint pleads facts which support other plausible

theories of Defendant's liability.  For instance, the Amended Complaint pleads Defendant's

vicarious liability for subsidiary's infringement under agency theory.  *See, e.g.,* Dkt. No. 22 at ¶

66 ("Defendants are vicariously liable for third parties' use, including TTE's use, of the []

Accused Products" and/or "Defendants condition receipt by the third parties of a benefit upon

performance of a step or steps of the patented method and establish the manner or timing of that

performance."); *see also Travel Sentry*, 877 F.3d at 1378.  The Amended Complaint also pleads

active inducement of infringement by Defendant:

> Defendant has induced infringement "by others, including agent-subsidiaries,
> affiliates, partners, CDN service providers, importers, resellers, customers and/or
> end users, in this District and elsewhere in the United States, through the
> dissemination of the [] Accused Products and the creation and dissemination of
> promotional and marketing materials, supporting materials, instructions, product
> manuals, and/or technical information relating to such products with knowledge
> and the specific intent that their efforts will result in the direct infringement

Dkt. No. 22 at ¶ 77; *see also Barry*, 914 F.3d at 1334 (an actor can be liable for actively inducing

others to perform infringing acts).  Each one of these theories is plausible to hold Defendant

liable for infringement even if Defendant is truly a holding company as alleged in the Motion.

Because the Amended Complaint pleads facts for these additional and uncontroverted theories of

liability against Defendant, together with the sufficient allegation that Defendant has knowingly

placed the accused products into the stream of commerce, personal jurisdiction is established

over Defendant.

**D.    Defendant's Reliance on *B/E Aerospace* is Misplaced**

Defendant relies heavily on this Court's *B/E Aerospace v. Zodiac Aerospace* decision to argue lack of personal jurisdiction. No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018) (Gilstrap, J.), adopted by *B/E Aerospace*, 2019 WL 354883 (E.D. Tex. Jan. 18, 2019) (Gilstrap, J.); Motion at 5-7.  But *B/E Aerospace* is readily distinguishable.  In *B/E Aerospace*, there was no evidence of the parent holding companies delivering the accused products into the stream of commerce even after an evidentiary hearing.  *Id*. at *3-5.  Here, in contrast, Canon has made sufficient allegations, as discussed above, establishing that Defendant has sold the accused products in the United States and thereby delivered the accused products into the stream of commerce without the need for a hearing.  S*ee supra* Section IV-A.

Furthermore, *B/E Aerospace* supports Canon's request for jurisdictional discovery, if needed, because there, parties conducted more than five months of discovery prior to the Court's evidentiary hearing on jurisdictional issues.  See Ex. 11 (Scheduling Order in *B/E Aerospace, Inc. v. Zodiac Aerospace,* No. 2:16-CV-1417-JRG-RSP, Dkt. No. 32, setting forth discovery schedule regarding Plaintiff's preliminary injunction motion); *see also B/E Aerospace,* 2018 WL 7140299 at *3 (showing that the Court conducted an evidentiary hearing on the jurisdictional issues).  Thus, should the Court order an evidentiary hearing as requested by Defendant here, Canon requests that the Court also allow Canon to take jurisdictional discovery as Canon here has made a "preliminary showing of jurisdiction" by identifying Defendant's multiple inconsistent and material statements as discussed above.  *Graftech,* 2014 WL 12591876, at *5.

### E.   Defendant's Alleged Jurisdictional Challenge Should Not Stay This Case As Defendant Has Admitted It (and Therefore TCL) Has Engaged In the Infringing Acts at Issue Here

Canon's choice to litigate against Defendant in this District should be honored. Defendant is attempting to insert TTE, its wholly-owned U.S. subsidiary based in Corona, California into this action, angling to create a reason to move for a transfer to the Central or

Northern District of California.  *See* Ex. 1 at 4-5 (Email from Mr. Chaikovsky to Mr. Thomases dated May 1st where Canon's counsel summarized the parties meet and confer and memorialized Defendant's request that Canon agree to transfer the case to TTE's home district); *see also id.* at 3 (Defendant's counsel not disputing the above summary of Defendant's counsel's request made to Canon's counsel).  But to the extent Defendant attempts to insert TTE into the case, such attempt here is inappropriate because Defendant (as well as the additionally named defendants) are all foreign entities and are subject to this Court's personal jurisdiction and venue is proper.  Courts routinely honor plaintiff's choice of forum to litigate against foreign entities alone.

For example in *3G Licensing, S.A. v. HTC Corp.*, the District of Delaware rejected a Taiwanese corporation's challenge to the Delaware Court's exercise of personal jurisdiction because "the record show[ed] that HTC Corp. intended to serve the Delaware market, and as a result, the accused products [we]re being sold here, thereby allegedly causing damage to Plaintiffs." 2017 WL 6442101, at *3.  HTC Corp.'s wholly-owned U.S. subsidiary was originally a co-defendant in that action.  Because co-defendant HTC America Inc. was based in the State of Washington, venue was not proper in Delaware as to HTC America Inc..  *Id.* at *2.  Judge Stark, however, allowed plaintiff to dismiss HTC America Inc. from the case to maintain the action in Delaware and denied HTC Corp.'s motions to dismiss for lack of personal jurisdiction over HTC Corp. and for improper venue, holding that Delaware is the proper venue for HTC Corp.  *Id.* at *2-3.  Next, HTC Corp. filed a request for a writ of mandamus concerning the decision on venue with the Federal Circuit, which denied HTC Corp.'s writ as well as its request for rehearing.  *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018); *In re: HTC Corp.*, No. 2018-130, 2018 WL 4442163, at *1 (Fed. Cir. Sept. 6, 2018) (denying the request for rehearing *en banc*).  Recently, the Supreme Court denied HTC Corp.'s petition for writ of

certiorari.  *HTC Corp. v. 3G Licensing, S.A.*, 139 S. Ct. 1271 (2019).  There is sound ground in

fact and law for the Court to exercise its jurisdiction and venue over the foreign TCL defendants

here.  Indeed, HTC Corp. and 3G Licensing, S.A. continue to litigate in Delaware to this day.

Defendant's alleged jurisdictional challenge should not prevent this case from proceeding

on the merits, as Defendant has admitted it (and therefore TCL) has engaged in the infringing

acts at issue here.  *See, supra* Sec. IV.A-C.  In other words, TCL Corporation and TCL King, in

addition to Defendant itself have previously admitted before the Court that they import the

accused products into the U.S. or sell them in the U.S.  Those admissions are sufficient to find

personal jurisdiction over at least these defendants.  Moreover, as demonstrated above,

Defendant maintains a "vertically integrated supply chain" into which, upon information and

belief, other named TCL defendants are fully integrated, directs and controls these other TCL

entities, is vicariously liable for these entities' infringing acts and induces their direct

infringement.  Thus, any personal jurisdiction challenges by any of these TCL entities would be

futile.  Together with all other allegations Canon made in the Amended Complaint, the Court has

sufficient basis to move this case past Defendant's jurisdictional challenge.

### F.    Defendant's Series of Inconsistent Prior Statements Warrant Jurisdictional Discovery

If the Court is not inclined to dismiss Defendant's Motion outright, alternatively, Canon

requests that the Court allow Canon to take jurisdictional discovery on Defendant as well as

other newly named TCL defendants.  *Nuance,* 626 F.3d at 1235-6 ("[D]iscovery should

ordinarily be granted where pertinent facts bearing on the question of jurisdiction are

controverted.").

Such jurisdictional discovery is more than warranted here because Canon established a

"preliminary showing of jurisdiction" by identifying the multiple inconsistent and material

20

statements made by Defendant.  *Graftech,* 2014 WL 12591876, at *5 (All plaintiffs need to show

in order to take jurisdictional discovery is a "preliminary showing of jurisdiction," which is

"something less than a *prima facie* showing, and requires 'the presentation of factual allegations

that suggest with reasonable particularity the possible existence of the requisite contacts.'")

(quoting *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005); *see also* Ex.

11, *Wapp v. Micro Focus*, slip op. at 2 (finding that plaintiff showed a "preliminary showing of

jurisdiction" where plaintiff cited evidence that, according to Defendant, concerned only of

defendant's U.S. subsidiary and granting jurisdictional discovery so that the "discovery will

enable the Court to determine whether the contacts identified by Plaintiffs relate to Defendant's

subsidiaries or to Defendant itself").

 In *Nuance,* the Federal Circuit held that the district court abused its discretion by not

allowing plaintiff there to take jurisdictional discovery where, as here, the plaintiff showed needs

for such discovery through defendant's own publication and contradictory statements:

> To the contrary, in its opposition brief, Nuance specifically questioned Abbyy
> Software and Abbyy Production's control over Abbyy USA, as well as the
> veracity of the Abbyy declarants' statements in view of seemingly contradictory
> statements from the declarants' employers. "[D]iscovery should ordinarily be
> granted where pertinent facts bearing on the question of jurisdiction are
> controverted...."  Accordingly, this court holds that the district court abused its
> discretion by dismissing Abbyy Software without jurisdictional discovery

Nuance, 626 F.3d at 1236.  Similarly, as demonstrated above, Canon identified even more

allegations of Defendant that are contradictory than the statements made by defendants in

*Nuance*.  Accordingly, jurisdictional discovery here is warranted.

 Moreover, Canon requests that the Court deem this case ready for scheduling conference

to proceed against Defendant without having to wait for the rest of the newly named defendants.

That should preserve the Court's resources and avoid redundant motion practices because the

jurisdictional discovery will likely verify Defendant' various inconsistent statements regarding

their related companies including the rest of named defendants and streamline the entire case, regardless of whether these other named defendants make appearance immediately by waiving the service of process or insist on being served via Hague Convention, which can easily take an year or longer.

## V.  CONCLUSION

For the foregoing reasons, Canon respectfully requests that this Court deny the Motion. Alternatively and to the extent there remains any question about the propriety of this Court's exercising its jurisdiction over the Defendant, Canon respectfully requests that the Court permit Canon to take jurisdictional discovery on Defendant as well as other named defendants and deem this case to be ready for a scheduling conference against Defendant without having to wait for other defendants to respond to the Amended Complaint.

DATED:          May 7, 2019                    PAUL HASTINGS LLP


By: */s/ Yar R. Chaikovsky*
      Yar R. Chaikovsky
      yarchaikovsky@paulhastings.com
      Hiroyuki  Hagiwara
      hiroyukihagiwara@paulhastings.com
      Kyotaro  Ozawa
      kyotaroozawa@paulhastings.com
      Nobu  Hiroi
      nobumasahiroi@paulhastings.com

      1117 S. California Avenue
      Palo Alto, California  94304-1106
      Telephone: (650) 320-1800
      Facsimile:  (650) 320-1900

      Harry L. Gillam, Jr.
      TX Bar No. 07921800
      GILLAM & SMITH LLP
      303 S. Washington Ave.
      Marshall, Texas 75670
      Telephone: (903) 934-8450
      Facsimile: (903) 934-9257
      gil@gillamsmithlaw.com

      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 7th day of May, 2019. Local Rule CV- 5(a)(3)(A).

/s/ *Yar R. Chaikovsky*

Yar R. Chaikovsky

24