# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CANON, INC.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TCL ELECTRONICS HOLDINGS LTD.,<br>TCL CORPORATION,<br>SHENZHEN NEW TECHNOLOGIES CO.<br>LTD.,<br>TCL KING ELECTRICAL APPLIANCE<br>(HUIZHOU) CO. LTD.,<br>TCL KING ELECTRONICS (CHENGDU)<br>CO., LTD.,<br>TCL KING ELECTRICAL APPLIANCES<br>(NANCHANG) CO., LTD.,<br>TCL TONGLI ELECTRONICS (HUIZHOU)<br>CO., LTD., and<br>TONLY ELECTRONICS HOLDINGS LTD.<br><br>　　　　　Defendants. | Civil Action No. 2:18-cv-00546-JRG<br><br><br>Jury Trial Demanded |

## DEFENDANTS' MOTION TO TRANSFER VENUE
## TO THE NORTHERN DISTRICT OF CALIFORNIA

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND ........................................................................... 2

III.   APPLICABLE LAW ...................................................................................... 3

IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE
       CONVENIENT .............................................................................................. 4

    A.  This Action Could Have Been Brought in the Northern District of California ................. 4

    B.  The Private Interest Factors Weigh Decisively in Favor of Transfer ................................ 5

        1.  The Cost of Attendance for Willing Witnesses is Significantly Lower in the Northern
           District of California Than in This District .................................................................. 5

        2.  Unlike This District, The Northern District of California Has the Power to Compel
           Significant Non-Party Witnesses to Attend Trial ...................................................... 11

        3.  Ease of Access to Sources of Proof Strongly Favors Transfer ................................... 12

        4.  No Practical Problems Exist ..................................................................................... 14

    C.  The Public Interest Factors Also Favor Transfer ............................................................ 14

        1.  No Administrative Difficulties Flowing from Court Congestion .............................. 14

        2.  Having Localized Interests Decided at Home Favors Transfer ................................. 14

        3.  Familiarity with Governing Law and Avoiding Conflict of Laws ............................ 15

V.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF
       CALIFORNIA .............................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
No. 2:17-cv-00513, 2018 WL 2329752 (E.D. Tex. May 23, 2018) .......................................12

*Blue Spike, LLC v. Juniper Networks, Inc.*,
No. 6:17-cv-16-KNM, 2018 WL 4222994 (E.D. Tex. Mar. 8, 2018) ..................................5, 6

*Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*,
441 F. Supp. 2d 786 (E.D. Tex. 2006)....................................................................................12

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..................................................................................11, 13, 14

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)...............................................................................................................12

*Harris v. Blockbuster, Inc.*,
No. 2:08-CV-155, 2008 WL 11447918 (E.D. Tex. Dec. 30, 2008) .......................................14

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)..............................................................................................15

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) .................................................................................................14

*In re HP Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...............................................12

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018)................................................................................................4

*Ingeniador, LLC v. Adobe Sys. Inc.*,
No. 2:12-cv-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ..........................................11

*Tech. Props. Ltd. v. Canon, Inc.*,
No. 6:12-cv-202, 2014 WL 12603506 (E.D. Tex. July 15, 2014)................................6, 11, 14

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ..............................................................................................4, 6

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...........................................................................4, 6, 11, 12, 14

*WIAV Networks, LLC v. 3Com Corp.*,
    5:09-cv-00101, 2010 WL 11484491 (E.D. Tex. July 15, 201) ................................................15

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................................1, 4

**Rules**

Fed. R. Civ. P. 4(k)(2) .............................................................................................................5

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1

Fed. R. Civ. P. 45(c)(1) ..........................................................................................................11

All named Defendants respectfully move to transfer venue under 28 U.S.C. § 1404(a) to the Northern District of California.[1]

## I.      INTRODUCTION

This action has no relationship to the Eastern District of Texas: none of the parties are located in this District, none of the relevant evidence is in this District, and none of the asserted patents or accused technologies were developed in this District.  Indeed, Plaintiff Canon, Inc. ("Canon") and all of the Defendants are based outside the United States, in Asia, as are most of their documents and likely party witnesses.  Canon has identified no connection between this District and its patent infringement claims aside from allegations that the accused products are sold in this District through national retailers, such as Walmart.

In contrast, Canon's claims and Defendants' defenses share an overwhelming connection to California, and more particularly, to the Northern District of California, where it would be far more convenient to litigate this action.  Canon has accused of infringement TCL televisions with a Roku, Inc. ("Roku") operating system, and has asserted patents that it purports to read on features

---

[1] Seven of the named defendants—TCL Electronics Holdings Ltd. ("TCL Holdings"), TCL Corporation ("TCL Corp."), Shenzhen TCL New Technologies Co. Ltd. ("Shenzhen TCL"), TCL King Electronics (Chengdu) Co., Ltd. ("TCL King Chengdu"), TCL King Electrical Appliances (Nanchang) Co., Ltd. ("TCL King Nanchang"), TCL Tongli Electronics (Huizhou) Co., Ltd. ("Tongli"), and Tonly Electronics Holdings Ltd. ("Tonly")—dispute personal jurisdiction in this forum and have moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Dkt. Nos. 19, 48.  In response, Canon does not dispute that personal jurisdiction is lacking over four of these defendants—TCL King Chengdu, TCL King Nanchang, Tongli, and Tonly—and has stated it would agree to dismiss them without prejudice.  Dkt. No. 54 at 1 n.1.  These four defendants join this motion contingent upon their not being dismissed before the Court rules on this motion. The other three Defendants that challenge personal jurisdiction here, TCL Holdings, TCL Corp., and Shenzhen TCL, specially appear for the purpose of the present motion. Similarly, each of the foregoing Defendants, along with TCL King Electrical Appliance (Huizhou) Co. Ltd. ("TCL King Huizhou"), disputes that that First Amended Complaint states a claim for relief and each has moved to dismiss under Fed. R. Civ. P. 12(b)(6).  Dkt. No. 48.  Defendants do not waive their defenses of lack of personal jurisdiction and/or failure to state a claim by joining and requesting the relief in this motion.

<u>**MOTION TO TRANSFER VENUE TO NORTHERN DISTRICT OF CALIFORNIA**</u> – Page 1

and functions of that Roku operating system.  Roku, a third party, is responsible for and most knowledgeable about the design, development, and operation of the accused technologies.  Roku is headquartered in the Northern District of California, where its relevant documents and witnesses are located.  The accused televisions are marketed, distributed, and sold exclusively by or on behalf of third party TTE Technologies, Inc. ("TTE").  TTE is headquartered in Corona, CA, in the Central District of California, far closer to the Northern District of California than the Eastern District of Texas.  Relevant TTE documents and witnesses also are located in Corona, CA.  Highlighting the centrality of Roku and TTE to this dispute, Canon references those two companies by name over *150 times* in its First Amended Complaint ("FAC").  As a counterpoint, Canon refers by name to most of the Defendants only one or two times in the FAC.

Other relevant third party witnesses and information are also located in or near the Northern District of California, solidifying that district as the clearly more convenient place to litigate this suit.  For example, significant development of digital video recorder ("DVR") and set top box ("STB") technology, which is allegedly implicated by and is relevant to the asserted patents, took place in and near the Northern District of California.  As a result, many inventors of prior art systems who are potential third party witnesses reside in or near the Northern District of California.

While many factors weigh in favor of transfer to the Northern District of California, not one weighs in favor of the Eastern District of Texas.  Accordingly, the Court should transfer this suit to the Northern District of California, as it is the clearly more convenient venue for this action.

## II.     FACTUAL BACKGROUND

In its original Complaint, Canon named TCL Holdings, a foreign holding company, as the only defendant.  Dkt. No. 1.  TCL Holdings moved to dismiss for lack of personal jurisdiction, while identifying TTE as the relevant domestic subsidiary that sells and distributes the Accused Products in the United States.  Dkt. No. 19.  Two days after TCL Holdings filed its motion, Canon

filed the FAC, naming seven additional foreign entities as defendants, but not naming TTE.  Dkt. No. 22.  Each of the Defendants is a foreign corporation with no presence in the Eastern District of Texas.  Dkt. Nos. 19-1 at ¶¶ 5-8; 48-11 at ¶ 4; 48-12 at ¶ 5.

The Accused Products are marketed, sold, and distributed in the United States by TTE, which has its only office in Corona, CA, in the Central District of California.  Gong Decl. ¶¶ 1, 6.  The accused technologies embodied in the Accused Products were designed and developed by Roku, which is headquartered in Los Gatos, CA, in the Northern District of California. [2] McFarland Decl. ¶¶ 4, 7.  The FAC acknowledges that TTE and Roku are central to this action, repeatedly describing TTE and Roku as alleged direct infringers and asserting that each is an agent of the named Defendants.  *See, e.g.*, FAC ¶¶ 89-92, 101, 124-27, 137, 164-67.  The FAC also identifies Roku's operating system ("Roku OS") as the accused technology and refers to the "infringing television systems" as "Roku TVs."  *E.g., id.* ¶¶ 52, 92, 97, 127, 133.  The Complaint cites to "roku.com," a Roku website, as evidence of alleged infringement.  *See, e.g., id.* ¶¶ 106, 142.  Similarly, the Complaint cites to "tclusa.com," a website owned by third party TTE, to show sale and distribution of Accused Products and evidence of alleged infringement.  *See, e.g., id.* ¶¶ 59, 67, 82, 105; Dkt. No. 37-3.  Like all of the Defendants, neither Roku nor TTE has any employees, documents, or facilities in the Eastern District of Texas.  Gong Decl. ¶¶ 1, 8, 13-14; McFarland Decl. ¶ 14.  Canon's FAC does not assert that Canon has any employees, facilities, documents, or witnesses in this District.

## III.    APPLICABLE LAW

Under 28 U.S.C. § 1404(a), transfer for convenience is appropriate where (1) "the judicial district to which transfer is sought could have been a district in which the claim could have been

---

[2] Roku is in the process of relocating its headquarters to San Jose, California, which is also within the Northern District of California.  McFarland Decl. ¶ 4.

filed" and (2) public and private factors favor transfer.  *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004).  To show that transfer is proper, the movant need not show that § 1404(a) factors "substantially outweigh the plaintiffs' choice of venue," and instead only needs to establish that the "transferee venue is clearly more convenient."  *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 314-15 (5th Cir. 2008).

The private factors are "(1) relative ease of access to source of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen I*, 371 F.3d at 203.  The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*  Plaintiffs' choice of venue is not an independent § 1404(a) factor.  *Volkswagen II*, 545 F.3d at 318.

## IV.     THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE CONVENIENT

Canon could have brought this suit in the Northern District of California, and the Northern District of California is a clearly more convenient venue than the Eastern District of Texas for this action.  Thus, transfer for the Northern District of California is appropriate.

### A.     This Action Could Have Been Brought in the Northern District of California

All Defendants in this action are foreign defendants.  For foreign defendants, venue is proper anywhere they are subject to personal jurisdiction.  *In re HTC Corp.*, 889 F.3d 1349, 1354-55 (Fed. Cir. 2018).

As explained in their motions to dismiss, all Defendants except TCL King Huizhou maintain that they are not subject to personal jurisdiction in Texas.  *See* Dkt. Nos. 19, 48.  To the

extent that personal jurisdiction over those Defendants is proper here, it would be equally proper in the Northern District of California, as Canon's jurisdictional allegations equally would support jurisdiction in the Northern District of California. *See generally* Dkt. No. 54 (repeatedly alleging contacts as sales "throughout the U.S."). Canon's jurisdictional arguments are not focused on Texas, but rather apply nationally. For example, Canon asserts that stream of commerce supports jurisdiction, and there is no dispute that the Accused Products foreseeably reach California; likewise, Canon asserts jurisdiction under Rule 4(k)(2), which, if applicable, permits jurisdiction in any judicial district. *See* Dkt. No. 54 at 15-16. Any contacts supporting jurisdiction in Texas, such as nationwide distribution of the alleged products, also support jurisdiction in California.

TCL King Huizhou manufactures the Accused Products and delivers them "free on board" to ports in China. *See* Dkt No. 48 at 6; 48-12 ¶ 7. In this litigation, TCL King Huizhou does not dispute personal jurisdiction under Canon's pleaded stream of commerce theory. *See id*. Thus, there could be no dispute that, under at least Canon's theory of personal jurisdiction in this action, Canon could have sued TCL King Huizhou in California. Furthermore, TCL King Huizhou has an employee in Corona, CA, relating to the Accused Products, further confirming that jurisdiction in California would be proper. Zhang Decl. ¶ 6. Likewise, TCL Holdings has acknowledged that it is subject to specific personal jurisdiction in California for this suit. *See* Dkt. No. 41 at 2-3.

### B.     The Private Interest Factors Weigh Decisively in Favor of Transfer

#### 1.     The Cost of Attendance for Willing Witnesses is Significantly Lower in the Northern District of California Than in This District

The cost of attendance for and convenience of identified willing witnesses strongly favors transfer to the Northern District of California. "This factor is generally the most important factor in a transfer analysis." *Blue Spike, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-16-KNM, 2018 WL 4222994, *3 (E.D. Tex. Mar. 8, 2018). In *Volkswagen*, the Fifth Circuit emphasized that

"[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." 545 F.3d at 317 (quotation marks omitted).  Where, as here, the distance between the transferor and transferee forum is greater than 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05. Further, while the convenience of all relevant witnesses is relevant, "the court affords more weight to the convenience of non-party witnesses" than to party witnesses. *Blue Spike*, 2018 WL 4222994, *3; *see also Tech. Props. Ltd. v. Canon, Inc.*, No. 6:12-cv-202, 2014 WL 12603506, *5 (E.D. Tex. July 15, 2014) ("The Court weighs most heavily the convenience of non-party witnesses.").

The convenience of identified ***nonparty witnesses***, perhaps the most important factor, strongly favors the Northern District of California, as those witnesses are located in or near that district.  Canon's allegations have placed two third parties, Roku and TTE, at the core of this dispute, and their witnesses are located in California— not in the Eastern District of Texas.

Roku is a third party central to Canon's allegations, and all its likely witnesses are located in the Northern District of California.  Roku developed and is most knowledgeable about the technology and features that Canon accuses.  Roku, headquartered in the Northern District of Californian, produces reference designs that manufacturers use to create circuit boards.  McFarland Decl. ¶ 7.  Roku then validates prototype TVs made with those circuit boards.  *Id.*  That work occurs in Roku's Los Gatos offices.  *Id.*  As such, employees responsible for the research, design, and development efforts relating to the accused technologies are located in Los Gatos.  *See id.* Specifically, the following potential witnesses are all based in Los Gatos or San Jose, California, both in the Northern District of California:

(1) Tom McFarland, OEM Director of Business Development, is the primary business contact for Roku's work with TTE, and is knowledgeable about Roku's relationship with TTE, as well as any relationship with the named Defendants, *id.* ¶¶ 5-6;

(2) Venkatesh Tumatikrishnan, Vice President of Roku TV Engineering, is a developer of and is responsible for the Roku OS on the Roku TVs, and is knowledgeable about the design, operation, and function of relevant aspects of the Roku OS, *id.* ¶ 8;

(3) Jeff Peters, Senior Software Engineer, is a developer of the remote control technology at issue (*see, e.g.*, FAC ¶¶ 68-72) with respect to Canon's assertion of U.S. Patent No. 7,746,413 (the "'413 Patent"), and is knowledgeable about the design, operation, and function of that technology, *id.* ¶ 9;

(4) David Westerhoff, Vice President of Software, New Products, is knowledgeable about the design, operation, and function of the image display technology (*see, e.g.*, FAC ¶¶ 104-08, 140-48, 180-86) at issue with Canon's U.S. Patent Nos. 8,078,767 (the "'767 Patent"), 8,346,986 (the "'986 Patent"), and 8,713,206 (the "'206 Patent"), *id.* ¶ 10;

(5) Prateek Tandon, Senior Director of Software Engineering, is knowledgeable and would testify about the design, operation, and function of the Roku app functionality (*see, e.g.*, FAC ¶¶ 71-72) at issue with respect to Canon's assertion of the '413 Patent, *id.* ¶ 11; and

(5) Kyle Vannucci, Director, Roku TV Marketing, is knowledgeable and would testify about marketing and distribution of the accused Roku TVs, *id.* ¶ 12.

These witnesses would be willing to testify at trial, and it would be far more convenient for these witnesses to testify in the Northern District of California, where they work, than in the Eastern District of Texas.  *Id.* ¶ 13.

While Roku has an office in Austin, Texas, no one in that office was involved in developing any accused functionality, and Defendants do not expect to call as a witness, or identify in their initial disclosures, any person from that office.  *See id.* ¶ 15.  Roku has no employees or facilities in the Eastern District of Texas.  *Id.* ¶ 14.

TTE is another third party central to Canon's allegations, and all its likely witnesses are in Corona, CA, in the Central District of California.  All but five of TTE's employees are located at its sole office in Corona, CA.[3]  Gong Decl. ¶ 8.  TTE is responsible for the marketing, sale, and distribution of the Accused Products.  *Id.* ¶ 6.  Those activities are performed TTE's employees in Corona.  *Id.* ¶ 8.  The potential witnesses who are most knowledgeable about subjects relevant to this suit are located in Corona.  Thomas Gong, the Controller & Director of TTE, is knowledgeable about the importation, marketing, and distribution of the Accused Products, and about TTE's relationship with the named Defendants, which Canon has put at issue in the FAC.  *Id.* ¶ 4.  He is located in Corona, CA.  *Id.* ¶ 1.  Other relevant TTE witnesses include Aaron Dew, Chris Larson, and Chris Luna, each of whom is located in Corona, CA.  *Id.* ¶¶ 9-11.  These witnesses would be willing to testify at trial.  *Id.* ¶ 12.  And Corona, CA, is far closer to the Northern District of California than to this District.  *See* Ex. 13.[4]  Thus, the Northern District of California would be more convenient for all of these witnesses to travel to than the Eastern District of Texas.  Gong Decl. ¶ 12.

Other non-parties with relevant information also are located in or near the Northern District of California.  For example, TiVo Corporation, headquartered in San Jose, CA, has long been

---

[3] While TTE is a subsidiary of one of the named defendants, TCL Holdings, Canon avoids naming it as a defendant here because TTE does not have a regular and established place of business in this District.  Thus, TTE and its officers, directors, and employees are third parties to this suit.
[4] "Ex." refers to an exhibit to the Declaration of Andrew T. Radsch, submitted herewith.

involved in developing and distributing DVR and STB technology and sold its first DVR in 1999. *See* Ex. 1.  As a long-time player in the STB and DVR spaces, and as a company that has merged with others in those spaces, such as Rovi Corporation, TiVo likely has witnesses knowledgeable about prior art systems for each of the patents-in-suit, as well acceptable non-infringing alternatives to the patents-in-suit, and documents concerning the same.  *See* Ex. 2.  For example, TiVo likely has witnesses knowledgeable about products that alter a display based on different remote inputs (such as via a mobile app or remote control), which is relevant to the '413 Patent; that stream broadcast and internet content over wired or wireless connections via, for example, a dual-tuner STB, which TiVo had developed, and which is relevant to the '130 Patent; and that display images after losing connection through any of the multiple logical or physical inputs on the boxes, which is relevant to the '767, '986, and '206 Patents.  *See id.*

Similarly, ReplayTV, headquartered in Mountain View, CA, was an early competitor of TiVo in the DVR and STB-spaces.  *Id.*  DirecTV acquired ReplayTV's assets in 2007.  Ex. 3. DirecTV is headquartered in El Segundo, California, and may have witnesses with knowledge of prior art ReplayTV systems and/or acceptable alternatives to the purported inventions of the patents-in-suit, and documents concerning the same.  *See id*.

In addition, multiple witnesses who worked on and are knowledgeable about prior art products and systems are located in California.  For example:

- Brian Lanier, who based on publicly available information lives in Cupertino, California (in the Northern District of California), led the development of the software architecture and design for the "Moxi Media Center," a home media server publicly introduced in 2002.  *See* Ex. 4.  As the Moxi Media Center was a remote-controlled system that included networking options to access content in a wired or

wireless manner, Mr. Lanier's role in the development of the Moxi Media Center makes him knowledgeable about this prior art system and the state of the art of the technology at issue in the '413, '767, '986, and '206 Patents.  *See* Ex. 5.

- Steve Perlman, who based on publicly available information lives in Mountain View, California (in the Northern District of California), worked on the Moxi Media Center and the first DVR at Sony Interactive Entertainment America LLC, the Dishplayer satellite receiver on Dish Network.  *See* Exs. 6, 7.  As these systems also implement remote controlled technology and streaming content, Mr. Perlman's central role in the early DVR industry makes him knowledgeable about these prior art systems, as well as the state of the art at issue in all of the Asserted Patents.

- Roger van der Laan, who based on publicly available information lives in the San Francisco Bay Area, California, was involved with all of the systems developed by Mr. Perlman's incubator, Rearden, which include "advanced HD video tuned for internet-based distribution" and OnLive, an internet-based video game streaming technology.  *See* Exs. 7-9.  Thus, Mr. Van der Laan is similarly knowledgeable about these prior art systems, as well as the general state of the art of the technology at issue in the '413, '767, '986, and '206 Patents.

- Robert Novak, who lives in Northern California, was VP of Technology at Digeo, a developer of interactive TV software and STB technology, worked on digital STB in the early 2000s, and oversaw the development of a robust portfolio of patents that are prior art to the Canon patents. *See* Exs. 10-11.  Mr. Novak is knowledgeable about prior art relevant to all of the patents in suit.

The cost of attendance of *party witnesses* also weighs in favor of transfer.  One of Defendant TCL King Huizhou's employees works in Corona, CA—none are based in Texas. Zhang Decl. ¶ 6.  That employee is knowledgeable about the manufacturing of the Accused Products.  *Id.*  It would be far more convenient for that witness to travel to Northern California than to this District.  Defendants' remaining party witnesses work abroad, in China.  *Id.* ¶¶ 6-7; Yang Decl. ¶ 5.  Similarly, Canon's party witnesses likely reside in Japan, where Canon is located. All six of the named inventors on the Asserted Patents are identified in the patents as residing in Japan.  Travel from China and Japan to San Francisco is far shorter than travel to Marshall, Texas.[5] *See* Ex. 12.

In summary, while relevant party witnesses are located in Asia, third party witnesses are located overwhelmingly if not exclusively in California, making this factor weigh decisively in favor of transfer to the Northern District of California.

### 2. Unlike This District, The Northern District of California Has the Power to Compel Significant Non-Party Witnesses to Attend Trial

"[T]he focus of this factor is on witnesses for whom compulsory process might be necessary."  *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-cv-00805, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014).  Witnesses may only be compelled to attend trial within 100 miles of where they live or work, or within the same state where they live or work provided they will not incur substantial expense.  Fed. R. Civ. P. 45(c)(1).  This factor favors transfer "when more third-party witnesses reside within the proposed venue."  *See Tech. Props.*, 2014 WL 12603506 at *4 (citing

---

[5] This Court has held that where witnesses reside far from either venue, such as outside of the United States, their convenience may be discounted.  *See Tech. Props.*, 2014 WL 12603506, at *5 (citing *In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009)).  However, to the extent the Court considers the convenience of out-of-country party witnesses, the Northern District of California is clearly more convenient for them than this District in view of the shorter travel time to the Northern District of California.  *See* Ex. 12.

*Volkswagen II*, 545 F.3d at 316).

Many non-party witnesses reside in the Northern District of California or elsewhere in California, and are thus subject to the proposed transferee court's subpoena power.  *See* Supra §IV.B.1.  There are a number of non-party witnesses knowledgeable about prior art systems and acceptable alternatives to the alleged inventions, as set forth above.  *Id.*  To the extent that this Court does not consider those witnesses' convenience under the willing witnesses factor above, then the Court should consider them as witnesses that the Northern District of California court could compel to testify at trial.   The same is true for the Roku and TTE witnesses set forth above, although there is evidence that those witnesses are willing witnesses, and so their convenience is more properly considered under the willing witnesses factor.[6]  *See* Supra §IV.B.1.

Defendants will be prejudiced if they cannot present these third party witnesses' live testimony to a jury at trial.  *See Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 796 (E.D. Tex. 2006) ("[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947)).  Accordingly, this factor weighs strongly in favor of transfer.  *See Tech Props.*, 2014 WL 12603506 at *4 (finding factor favored transfer where prior art witnesses resided in California).

### 3.    Ease of Access to Sources of Proof Strongly Favors Transfer

The relevant documents in this action are more easily accessible from the Northern District of California than from this District.   The ease of access factor considers where documentary

---

[6] *Cf. In re HP Inc.*, No. 2018-149, 2018 WL 4692486, *3 n.1 (Fed. Cir. Sept. 25, 2018) ("[E]ven the Eastern District of Texas's own cases have held that, when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513, 2018 WL 2329752, *6 (E.D. Tex. May 23, 2018)).

evidence is stored.  *Volkswagen II*, 545 F.3d at 316.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d at 1345.  Canon expressly has accused both TTE and Roku, corporations based in California with documents in California, of being infringers.  *See* FAC ¶¶ 90, 125, 165, 203.

Here, the Defendants are foreign corporations whose documents are all outside of the United States, with the exception of TCL King Huizhou, which has an employee who maintains documents in Corona, CA.  *See* Yang Decl. ¶¶ 5-6; Zhang Decl. ¶¶ 6-8.  Those party documents are closer to the Northern District of California than to this District.

Accused direct infringers also include Roku and TTE, who are highly relevant third parties.  *See, e.g.*, FAC ¶¶ 89-92.  Both TTE and Roku are headquartered in California, and their relevant documents, which likely will form the bulk of relevant evidence in this case, are in California.  Gong Decl. ¶ 14; McFarland Decl. ¶ 16.  Specifically, Roku's relevant documents relating to the Roku TVs, such as supply and distribution agreements, financial documents, technical design and development documents, product support documents, source code, and marketing documents, are maintained in either Los Gatos or San Jose, California.  McFarland Decl. ¶ 16.  While Roku has an office in Austin, Texas, the accused functionalities were not developed in that office, and documents relating to the accused functionalities are not maintained there.  McFarland Decl. ¶¶ 15-16.  TTE maintains its supply and distribution agreements, financial documents, marketing and advertising documents, and sales documents either physically at its headquarters in Corona, California or electronically on servers located in Corona, California.  Gong Decl. ¶ 14.

Finally, documents in the possession of the other third party witnesses identified above, such as TiVo, ReplayTV/DirecTV, and the individual prior art inventors, all of whom are

headquartered or live in California, are more easily accessible from the Northern District of California than from this District.  Accordingly, both party and nonparty sources of proof are located more conveniently to the Northern District of California, and this factor favors transfer.

### 4.      No Practical Problems Exist

This factor is applicable "in rare and special circumstances" that are "established by clear and convincing evidence."  *See Harris v. Blockbuster, Inc.*, No. 2:08-CV-155, 2008 WL 11447918, *2 (E.D. Tex. Dec. 30, 2008) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003)). Here, no such circumstances exist and the factor is neutral.

### C.      The Public Interest Factors Also Favor Transfer

### 1.      No Administrative Difficulties Flowing from Court Congestion

This is "the most speculative of factors" and when the convenience factors weigh in favor of transfer, the speed of the transferee district does not outweigh those private factors.  *See Tech. Props.*, 2014 WL 12603506 at *6 (citing *In re Genentech*, 566 F.3d at 1347).  As there are no administrative difficulties that would result from transferring the case, this factor is neutral.

### 2.      Having Localized Interests Decided at Home Favors Transfer

Localized interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318.  This District does not have a localized interest in this action, as the only actions alleged to have taken place in this District are sales of the Accused Products through national retailers.  *See Tech. Props.*, 2014 WL 12603506 at *6 ("[W]hen products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue.").  Indeed, Canon itself filed another action against Roku on the same patents, against the same products, in the Western District of Texas, highlighting that there is no particularized interest in the Eastern District of Texas.  *See* Complaint, *Canon, Inc. v. Roku,*

*Inc.*, No. 6:19-cv-00245 (W.D. Tex. Apr. 5, 2019), Dkt. No. 1.  Canon dismissed that action before

Roku responded.  *Id.*, Order Granting Motion to Dismiss (W.D. Tex. Aug. 7, 2019), Dkt. No. 10.

In contrast, the Northern District of California "would likely see the issues of this case

having local import" because it implicates California corporations.  *See WIAV Networks, LLC v.*

*3Com Corp.*, 5:09-cv-00101, 2010 WL 11484491, *5 (E.D. Tex. July 15, 201).  Roku, who

designed and developed the technology accused here, and who Canon has alleged is a direct

infringer and an agent of Defendants, is headquartered in the Northern District of California.  And

TTE, who distributes and markets the accused products, also is headquartered in California.  Thus,

the Northern District of California has a localized interest in adjudicating the case.  *See id.* (finding

local interest in the Northern District of California where the "work of reputation of those

developing and testing accused products" was called into question by patent infringement) (citing

*In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).

### 3.  Familiarity with Governing Law and Avoiding Conflict of Laws

These factors are neutral, as this case involves federal patent law and both courts are

equally familiar with federal law.  *See WIAV Networks*, 2010 WL 11484491, at *6.

## V.  THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

The convenience of witnesses, availability of compulsory process, locations of sources of

proof, and localized interests weigh decisively in favor of transfer to the Northern District of

California, which is a clearly more convenient venue for this action.  In contrast, none of the factors

weighs in favor of this District, which has no connection at all to this suit.  Accordingly, the Court

should grant Defendants' motion to transfer venue to the Northern District of California.

Respectfully submitted,

/s/ Jennifer H. Doan
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com


Andrew N. Thomases
(CA Bar No. 177339)
(Eastern District of Texas Member)
Andrew T. Radsch
(CA Bar No. 303665)
(Eastern District of Texas Member)
Christopher M. Bonny
(CA Bar No. 280554)
(Eastern District of Texas Member)
ROPES & GRAY LLP
1900 University Avenue
East Palo Alto, CA  94303-2284
Telephone: (650) 617-4000
Facsimile: (650) 617-4090
Email: andrew.thomases@ropesgray.com
Email: andrew.radsch@ropesgray.com
Email: chistopher.bonny@ropesgray.com

**ATTORNEYS FOR DEFENDANTS[7]**

---

[7] TCL King Electronics (Chengdu) Co., Ltd.; TCL King Electrical Appliances (Nanchang) Co., Ltd.; Shenzhen TCL New Technologies Co. Ltd.; TCL Tongli Electronics (Huizhou) Co., Ltd.; Tonly Electronics Holdings Ltd.; TCL Corporation; TCL King Electrical Appliances (Huizhou) Co. Ltd.; and TCL Electronics Holdings Ltd.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 12th day of September, 2019.

*/s/ Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiff and Defendants conferred via telephone on September 6, 2019.  The parties reached an impasse regarding the relief requested, leaving an open issue for the Court to resolve.

*/s/ Jennifer H. Doan*
Jennifer H. Doan