# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CANON, INC. | § | CIVIL ACTION NO. 2:18-cv-00546 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| TCL ELECTRONICS HOLDINGS LTD., *et al.* | § | |
| | § | |
| | § | |
| Defendants. | § | |

# PLAINTIFF CANON, INC.'S OPPOSED MOTION TO MODIFY THE PROTECTIVE ORDER TO PERMIT REMOTE REVIEW OF SOURCE CODE

Canon moves the Court to modify the protective order to permit remote review of source code in light of the travel restrictions and health concerns caused by the COVID-19 pandemic. While the parties have attempted to conduct in-person source code review to move the case forward, as the Court stated in its April 20, 2020 Standing Order, "in-person source code review is unduly hazardous, and in some cases impossible, during the COVID-19 crisis" and the parties should "review source code during the pandemic without the need for travel or in-person code review."

Because the protective order was negotiated and entered prior to the onset of the pandemic, it contemplates only in-person review of source code. One of Canon's source code experts lives in California, while the other three live in Maryland and Virginia. Given the stay-at-home orders issued in California, Maryland, Virginia, and D.C., the health concerns raised by Canon's experts, and considering the Court's guidance, Canon proposes to modify the protective order to permit remote source code review under a safe and secure procedure.

Defendants object to this procedure based on security concerns. Their objections are unfounded. Secure VPN software, coupled with physical and virtual monitoring, allows the producing party to control the code environment to the same extent as an in-person review. Defendants propose instead that Canon's experts should face the risks inherent in an in-person review. In light of Defendants' objections, and under pressure to keep the case moving, Canon's experts have reluctantly agreed to proceed with the in-person review. However, Canon's experts continue to express concerns and insist that remote review is a much more appropriate and safe option—and, therefore, under the Court's guidance, should be the preferred option.[1]

---

[1] Canon's proposed modifications are enclosed as Ex. A (clean) and Ex. B (with tracked changes).

## I. FACTUAL BACKGROUND

In April 2019, Canon retained Nigel Jones of RMB Consulting as a source code consultant in this case. He is assisted by two engineers: Thomas Brooks and Michael Wilk. Mr. Jones resides in Maryland. Mr. Brooks resides in Virginia. And Mr. Wilk resides in California.

The parties' negotiated the protective order in early November 2019, which the Court entered on November 13. Dkt. No. 79. At the time, neither the parties nor the Court could have anticipated the pandemic and ensuing travel restrictions and statewide stay-at-home orders issued by dozens of states. As a result, the protective order assumed an environment in which the parties' experts could freely and safely travel to any location. Indeed, it requires in-person source code review on a stand-alone computer located at the producing party's outside counsel's office.[2] Had Canon known what would occur in the coming months, it would have proposed terms reducing unnecessary travel.

One of Canon's experts has already conducted three separate in-person source code reviews as the outbreak has worsened, causing the parties to explore alternatives. In February, Mr. Wilk traveled to Roku's counsel's office in Silicon Valley to review Defendants and Roku's code. However, because much of the Roku OS code was missing, he returned home while Canon pressed Roku to fix the deficiencies. Roku then represented it would produce the full Roku OS code, again requiring Mr. Wilk to travel for the review. When at Roku's counsel's office again, Mr. Wilk discovered the Roku OS code was incomplete again. On the last day of his review, Roku produced a second laptop with some additional code, which Mr. Wilk determined was also incomplete. He thus returned home frustrated while Canon conferred again with Roku on the

---

[2] Dkt. No. 79 at ¶ 10(a) ("Access to a Party's Source Code Material shall be provided only on 'stand-alone' computer(s)[,] . . . located at the offices of the producing Party's outside counsel.").

deficiencies. Then, in mid-March, Mr. Wilk traveled to counsel's office only to discover, yet again, the Roku OS code was incomplete. At this point, Canon communicated it intended to move the Court, and on March 24, Roku again committed to a full production. However, because of California's stay-at-home order issued a few days earlier, Mr. Wilk was unable to travel.[3]

Roku therefore proposed making its source code available in Texas for review by Roku's experts who would travel from Maryland and Virginia (the D.C. area had not yet issued similar orders—though they would days later). However, in light of the health concerns raised by its experts, Canon proposed on March 24 that Roku make its source code available at a third-party facility in the Washington, D.C. area (*i.e.*, within driving distance to Mr. Nigel and Mr. Brooks), or alternatively to conduct remote review of source code (to allow Mr. Wilk to continue with the review). But because Roku rejected the remote-reviewing proposal based on security concerns, the parties focused on negotiating a third-party facility option in the D.C. area, including conducting the review at the office of one of Roku's outside counsel: Oblon, McClelland, Maier & Neustadt, LLP ("Oblon"). Despite the parties' efforts, however, on March 30, Maryland, Virginia, and D.C. all issued stay-at-home orders.[4]

As a result of the Maryland order, Mr. Jones is strictly prohibited from traveling, just like Mr. Wilk. Although the Virginia orders permit some work travel, it also closed all non-essential businesses and require individuals to "at all times maintain social distancing of at least six feet from any other person" and "utilize teleworking as much as possible." Ex. F, Orders 55 at § 1, Order 53 at § 8. Thus, while travel and in-person work is technically possible for some

---

[3] Ex. C (California order and guidance).
[4] Ex. D (Maryland order and guidance); Ex. E (D.C. order); Ex. F (Virginia orders 53 and 55). The Virginia's orders require "[a]ll individuals in Virginia [to] remain at their place of residence" except in certain situations, including "[t]raveling to and from one's residence, place of worship, or work," and closes most non-essential businesses. *Id.*, Order 55 at § 1.

businesses and persons in Virginia, it is not recommended and should be avoided if social distancing cannot be implemented or if teleworking is an available alternative.

Moreover, even putting aside whether Mr. Brooks can legally travel (which is uncertain under the Virginia orders given the teleworking and six-feet provisions), his unique circumstances present heightened risk to his family. Mr. Brooks resides with his wife, three children, and his elderly parents. Brooks Decl. ¶ 8. And his wife is the primary caregiver for his mother-in-law, who lives nearby and is in poor health. *Id*. Mr. Brooks also regularly helps his mother-in-law. *Id*. In light of the increased (and potentially fatal) risk that COVID-19 has on those over the age of 65 or with underlying medical conditions, Mr. Brooks has raised concerns about putting his family at risk by conducting the inspection at the proposed third-party facility. *Id*. at ¶¶ 8–9.[5] However, in light of Roku's rejection of a remote review option, and facing the pressure of the case schedule, Mr. Brooks reluctantly agreed to face to risk of doing an in-person review. On April 15, he began his review of the source code at Oblon's offices in the Virginia.[6]

While the staff at Oblon have agreed to take precautions at its offices—*e.g.*, washing down the surfaces in the review room—Mr. Brooks continues to feel uneasy about the review and strongly prefers to transition to a remote review option. Thus, following this Court's issuing the April 20 Standing Order, which acknowledged the inherent risks of an in-person review and advised the parties to explore alternatives, Canon again asked Roku whether it would reconsider its position. Roku again rejected this proposal despite the Court's Standing Order. On April 22,

---

[5] Also, both Mr. Jones and Mr. Wilk refused to work at a third-party facility option in the D.C. area to protect themselves and their families. Jones Decl. ¶¶ 9–11; Wilk Decl. ¶¶ 8–9.
[6] Canon also retained an additional expert (Wai (Amy) Cheung-Hebert) in April in the event Mr. Brooks refuses to conduct the review in-person. Ms. Cheung-Hebert similarly would strongly prefer a remote review option given the health risks. Cheung-Hebert Decl. ¶¶ 6–9.

4

Roku's stated it "will not permit its source code to be reviewed by any remote means. This is an important issue for Roku and it will exhaust all available avenues to protect its source code."

Canon's ultimate revised language for the Protective Order included three options for review: an option for conducting review at the offices of the producing party's outside counsel, a third-party facility option, and remote review option.[7] The proposal makes clear that the remote review option is only available if the expert "is located in a state or locality with a stay-at-home order requiring or recommending residents to remain at home or if the representative conducting the review has personal or family health concerns." Ex. A at ¶ 10(a). Otherwise, the review must be conducted at an agreed upon third-party escrow facility or outside counsel's office. *Id*.[8] If the remote review procedure is an option, Canon proposed a straightforward procedure that safely permits remote review in a secure environment. Ex. A at ¶ 10(c).[9]

---

[7] Remote review can be done through outside counsel or through a vendor of its choice.
[8] The third-party escrow facility option is also necessary in case (as is the case right now) the producing party's outside counsel is not hosting visitors at its office.
[9] Remote review is described as follows: "(a) the producing Party will make the Source Code Material available either on its counsel's or vendor's secure remote computer; (b) the producing Party or its vendor will provide remote access to the remote computer via VPN or other secure connection remote computer on which receiving Party's representative is able to review the Source Code Material along with any requested software; (c) the producing Party or its vendor will then ship the reviewing computer to receiving Party's representative, through which the representative can access the Source Code Material on the remote computer via the secure connection (along with instructions for use); (d) the producing Party or its vendor will also ship a wifi or cellular camera (e.g., an iPad on a tripod) to the receiving Party's representative (along with instructions for use) and the representative will position the camera in his or her reviewing room so as to allow the producing Party to view the representative's activities during the review (monitoring will only be of the general area where the review is occurring; not of the actual laptop screen); (e) if the producing Party views any activities by the representative to be in violation of this Order, either on the review computer, remote computer, or in the reviewing room (e.g., attempts to download software or use a mobile device to take pictures of the code), the producing Party may disconnect the remote connection to prevent further access; (f) if the receiving Party's representative would like any copies of Source Code Material produced pursuant to this Order, he or she may save copies on the secure remote computer (e.g., via print to PDF) to be later printed and produced by the producing Party consistent with this Order; and

## II. ARGUMENT

The purpose of the current code review protocol is to ensure the producing party has control over the review environment and to ensure there is no unauthorized reproduction—*i.e.*, misappropriation. For example, there are limitations on the means by which the reviewing party may request copies of the source code or use those copies in litigation. *See* Dkt. No. 79 at ¶ 10(g)–(j). To that end, Canon's proposals keep all of these limitations in place. The only change in Canon's modifications is to suspend the in-person review requirement and permit remote review (only if certain factors are present) through a secure remote (*e.g.*, VPN) environment.

Canon also included additional safeguards to enforce security through remote monitoring of the review via a camera and by monitoring activities on the code computer. Ex. A at ¶ 10(c). The producing party would retain the same control over the code environment as if it were an in-person review. For example, if the producing party were to view the wifi camera and find an expert engaging in suspicious activity (*e.g.*, taking pictures of code), he can disconnect VPN access immediately. And he can easily monitor the expert's review on the code end of the connection (*e.g.*, track abnormal activity like loading software) and also disable unwarranted activities (*e.g.*, file saving). *Id*. Roku's unsupported security objection thus rings hallow.[10] Further undercutting Roku's objection is the fact that while Roku's Austin office is closed due to Austin's stay-at-home order, ▮

---

(g) once the review is complete, the producing Party will arrange a courier to receive the reviewing computer and camera for shipping back to the producing Party[.]"
[10] Canon notes that while the protective order was negotiated between Defendants and Canon (not Roku), the negotiations regarding Canon's proposed modifications have revolved around production of Roku's code (not Defendants'). Nevertheless, Defendants appear to be the ones objecting (through their joint counsel), presumably ▮ .

6

████████████████████████████████████████████████.[11] Also, Canon is producing code too, and it is amenable to this remote review procedure for the benefit of Defendants' experts.

Further, while Canon's experts have nevertheless reluctantly agreed to proceed with the in-person review in light of Roku's rejecting any remote review option, Canon's experts have repeatedly requested remote review in light of the health concerns at issue for themselves and their families. Moreover, Despite Roku's insistence in this action that Canon's experts review code outside their homes at third-party facilities, in a separate action Roku recently requested a trial continuance on the grounds that the its counsel—attorneys at the law firm Oblon—who are located in Maryland and Virginia, reside in states where stay-at-home orders "essentially prohibit[] in-person meetings" and where "in-person interactions are foreclosed."[12]

In sum, as requested by this Court, Canon is proposing new avenues for code review that would allow the case to progress despite the rapidly evolving public health emergency. Canon's proposal allows the parties to proceed safely while providing the same level of security and control over the source code environment as would be present in an in-person review.[13]

---

[11] Ex. G, Edgell Dep. at 25:22–28:17, April 23, 2020 (████████████████████████████████████████████████████████████████████████████████████).

[12] *MV3 Partners v. Roku*, No. 6:18-cv-00308, Dkt. No. 170 at 2 (W.D. Tex. April 2, 2020) ("While the [VA] order allows individuals to leave their home to go to work on a daily basis, [] it also requires that people maintain social distancing in shared spaces, [] and in compliance with this, Oblon employees (including attorneys on this case) are working from home.").

[13] At least one other court has ordered the parties to "propose an alternate method of timely expert source code review…without a schedule disruption" in light of "the difficulty traveling for an in-person review of source code at counsel's office." *Bot M8 v. Sony*, No. C 19-07027, Dkt. No. 131 (N.D. Cal. Mar. 26, 2020). In response, Sony agreed it will "make arrangements to allow remote review via WebEx [] during normal business hours of Sony's source code production" so long as the reviewers agree they "will not allow viewing of the source code by anyone not permitted to do so under the Protective Order, and [] will not attempt to transfer, copy, or screen capture the source code, or otherwise make improper use of the remote review." *Id.* at Dkt. No. 132. The court subsequently adopted the proposal. *Id.* at Dkt. No. 133.

DATED: April 23, 2020 PAUL HASTINGS LLP

By: /s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky
yarchaikovsky@paulhastings.com
Hiroyuki Hagiwara
hiroyukihagiwara@paulhastings.com
Jeffrey A. Pade
jeffpade@paulhastings.com
Bruce S. Yen
bruceyen@paulhastings.com
Kyotaro Ozawa
kyotaroozawa@paulhastings.com
Jeffrey A. Pade
jeffpade@paulhastings.com
Andy LeGolvan
andylegolvan@paulhastings.com

1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Harry L. Gillam, Jr.
TX Bar No. 07921800
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and was served on all counsel via electronic mail on this 23rd day of April, 2020. Local Rule CV- 5(a)(3)(A).

/s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky

## CERTIFICATE OF CONFERENCE

Counsel for the parties have complied with the meet and confer requirement in Local Rule CV-7(h). On March 24 and 26, 2020, counsel for Canon and counsel for Defendants conducted a personal conference by phone regarding this motion. Defendants stated that they are opposed to the relief requested herein. Accordingly, the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that this document is filed under seal pursuant to the Protective Order (Dkt. 79) approved and entered into this case.

/s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky