**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| CANON, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>TCL ELECTRONICS HOLDINGS LTD., et al.,<br><br>  Defendants. | Civil Action No. 2:18-cv-00546-JRG<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' OPPOSITION TO CANON'S MOTION FOR LEAVE TO SERVE
<u>SUPPLEMENTAL INFRINGEMENT CONTENTIONS</u>**

██████████████████████████
██████████████

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ................................................................................................ 2

    A.   Canon's Proposed P.R. 3-1(f) Supplement ................................................................ 2

    B.   Canon's Proposed Supplemental Claim Charts ......................................................... 3

II.  CANON'S REQUEST FOR LEAVE TO SERVE SUPPLEMENTAL
    CONTENTIONS LACKS GOOD CAUSE ................................................................... 5

    A.   There Is No Good Cause For Amendment Of The P.R. 3-1(f) Disclosures ............... 6

        1.   Canon Did Not Exercise Diligence ................................................................. 6

        2.   Canon Does Not Establish the Importance of the ████████ .................... 8

        3.   Defendants Will Suffer Substantial Prejudice ................................................. 8

        4.   A Continuance Is Necessary If Defendants Are Allowed to Serve
            Supplemental Infringement Contentions ....................................................... 11

    B.   There Is No Good Cause For The Supplemental P.R. 3-1(c) Claim Charts ............. 12

        1.   Canon's 30 New Claim Charts Are Belated and Futile ................................. 12

        2.   Canon's New Claim Charts Are An Impermissible New Theory................... 14

        3.   Canon's Claim Charts Do Not Comply With P.R. 3-1(c) ............................. 14

III. CONCLUSION ................................................................................................................ 15

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS- Page i**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. T-Mobile USA, Inc.*,
   No. 6:12CV122, 2014 WL 12639945 (E.D. Tex. Nov. 12, 2014) ............................................. 8

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ........................................................................................... 7, 9

*Computer Acceleration Corp. v. Microsoft Corp.*,
   503 F. Supp. 2d 819 (E.D. Tex. 2007) ................................................................................ 8, 9

*Connectel, LLC v. Cisco Sys., Inc.*,
   391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................................................................... 16

*Packet Intelligence LLC, v. NetScout Systems, Inc.*,
   No. 2:16-CV-230-JRG, 2017 WL 2531591 (E.D. Tex. Apr. 27, 2017) ............................. 6, 11

*Realtime Data, LLC v. Rackspace US, Inc.*,
   No. 6:16-cv-00961-RWS-JDL, 2017 WL 1927749 (E.D. Tex. May 10, 2017) ..................... 16

*Seven Networks, LLC v. Google LLC*,
   No. 2:17-CV-00442-JRG, 2018 WL 4501952 (E.D. Tex. July 11, 2018) (C.J. Gilstrap) ......................................................................................................................................... 7

*UltimatePointer, LLC v. Nintendo, Co.*,
   No. 6:11-CV-496, 2013 WL 12140173 (E.D. Tex. May 28, 2013) ................................ 13, 14

**Other Authorities**

P.R. 3-1(f) ....................................................................................................................................... 7

Canon, Inc.'s ("Canon") motion for leave to serve supplemental infringement contentions fails to meet the good cause standard and should be denied. For seven months Canon had taken the affirmative and unequivocal position that it would not rely on its own products as practicing any of the claimed inventions. During that time, Canon did not waver in its position, despite having in its sole possession at all times the necessary information—and the obligation—to disclose whether any of its products practice the claimed inventions. Only now, with expert reports and the close of discovery weeks away, does Canon come forward to announce that, yes, it does practice its own products, and seeks to amend its P.R. 3-1(f) disclosure in order to rely on those products. This represents a fundamental shift in Canon's litigation posture from that of a non-practicing entity into a company that allegedly enjoys success from its intellectual property, and opens up additional discovery complications that the case schedule does not allow for.

As to Canon's proposed P.R. 3-1(c) supplement, it was supposed to address the many deficiencies that Defendants have been asking Canon to correct for months. For the most part, Canon did not. Instead, Canon attempts to introduce thirty new claim charts, covering six newly charted accused products, in addition to the original five charts that pertained to only a single accused product. Each of these new claim charts is a new standalone representative product chart, in which the newly charted product is purportedly representative of a sub-group of the accused products. Rather than serving their purported purpose of "further demonstrating" that the originally charted 55R617 product is representative of all accused products, Canon's new claim charts are little more than a backdoor for Canon to flexibly assert representative products at trial.

Both categories of supplementations are inexcusably tardy and overly prejudicial to Defendants. Canon's motion should be denied.[1]

---

[1] Canon filed the present motion prior to the Court's *Markman* Order on May 1, 2020. This motion, and Defendants' opposition to it, does not pertain to amendments allowed under P.R. 3-6(a)

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 1**

I.      **FACTUAL BACKGROUND**

  A.    <u>**Canon's Proposed P.R. 3-1(f) Supplement**</u>

On September 6, 2019, Canon Served its Disclosure of Asserted Claims and Infringement Contentions.  Pursuant to P.R. 3-1(f), if Canon wished to rely "for any purpose" on an assertion that its own products practice any of the alleged inventions of the Asserted Patents, Canon was required to disclose that information at that time.  In its P.R. 3-1(f) disclosure, Canon elected to disclaim any reliance on its own products for any purpose in this action, stating that Canon "does not assert that its own [products] practices the claimed inventions of the Asserted Patents."  Mot., Ex. A at 7.  For more than seven months after serving its P.R. 3-1(f) contentions, and through claim construction and nearly the entirety of the fact discovery period, Canon continued to assert it would not rely upon any of its own products for any purpose in this action.

On April 8, 2020 Canon served amended infringement contentions in which, for the first time, Canon asserted that it sought to rely on its ▮▮▮▮▮▮▮▮ product as practicing certain of the alleged inventions.  In doing so, Canon did not identify any information that was not available to it at the time it served its P.R. 3-1(f) disclosure.  Instead, Canon confirms that it had failed to investigate whether its own products practice any of the asserted claims.  Mot. at 7, 10.

Canon's discovery responses in this action are consistent with its failure to investigate its own practicing products.  For example, in its December 9, 2019 responses to interrogatories that requested information about any first use, manufacture, or sale of its own alleged inventions, and information regarding any product that Canon contends practices any asserted claim, Canon provided no substantive responses. Ex. 1 at 11-12, 38-39.  Canon apparently did not conduct that investigation until months later, as Canon identified the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as allegedly practicing claims of the '767, '986, and '206 patents only on April 8, 2020. Ex. 2 at 13-15, 45-48; *see also* Mot. at 6-7.  Moreover, Canon identified in a later supplemental interrogatory response

the predecessor ▮▮▮▮ as practicing the '767, '986, and '206 patents in a similar manner to the ▮▮▮▮ Ex. 3 at 13-16, 46-49. While Canon seeks to rely on the ▮▮▮▮ under P.R. 3-1(f), Canon does not seek to rely upon the ▮ product.

With only weeks left in expert and fact discovery,[2] Canon has fundamentally altered its "overall trial theme" from a non-patent-practicing party to a Plaintiff that allegedly has appreciated "success in developing and implementing its intellectual property." *See* Mot. at 10.

### B. Canon's Proposed Supplemental Claim Charts

On December 26, 2019, Defendants notified Canon by letter that its P.R. 3-1(c) claim charts—comprised of only five claim charts directed to one accused product—contained significant deficiencies and intertwined errors that rendered them non-compliant with P.R. 3-1 and signaled a failure by Canon to conduct an adequate pre-filing investigation. Ex. 4.

Defendants pointed to aspects of Canon's contentions that failed to inform Defendants of Canon's theories of infringement. *See id.* For example, for the claim limitation in the '130 patent of "periodically repeat accessing of a URL" while the device is turned off or tuned to a traditional broadcast channel, Canon failed to fully disclose how it contended the one charted accused product met that limitation, and instead asserted on "information and belief" that the limitation is met. *See id.* at 1-2. Defendants explained that publicly available (and free) network traffic analyzers could and would readily confirm that, under any claim construction, the accused products did not periodically repeat access a URL to buffer streaming content when the accused product was powered off or switched to traditional television broadcasts. *Id.* at 2. Moreover, while Canon included photos of the accused product in operation, it utilized those photos in a manner that was misleading (*e.g.*, using the ***same*** photo to allegedly show the TV before powering off, and after

---

[2] At the time Canon first served its proposed supplemental contentions on April 8, there were only three weeks left in fact discovery.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 3**

being turned back on) and/or incorrect (*e.g.*, alleging that the Sling TV progress bar indicated the amount of buffered content, when publicly available information confirmed it did not). *Id.* at 3-5.

Defendants also questioned Canon's purported "information and belief" for its contentions concerning '767 and '986 patents for claims involving data displaying data from "USB imaging class" devices. *Id.* at 5. Defendants explained that the accused products did not support USB imaging class devices—a fact corroborated by simply attempting to connect a USB imaging class device to the accused products. *Id.* Defendants called on Canon to withdraw its contentions involving the foregoing limitations, or to otherwise produce all information that supported Canon's "on information and belief" allegations so that Defendants could understand Canon's theory of infringement. *See id.* at 5-6.

Having received from Canon no substantive response, and after further review and analysis of Canon's infringement contentions, Defendants sent another letter on January 26, 2020, reiterating previous points and identifying additional examples of the pervasive deficiencies in Canon's contentions. Ex. 5. First, following up on earlier email correspondence, Defendants explained how Canon's contentions failed to meet the requirements of P.R. 3-1 because Canon did not explain the technical and functional identity of the purported representative product[3] (55R617) to all other accused products. Ex. 5 at 1-2. And in numerous instances Canon failed to specifically identify where in each accused product each claim element could be found, often due to conclusory "information and belief" allegations with little to no supporting basis. *Id.* at 2-5.

Canon repeatedly ignored or declined to substantively respond to these deficiencies, prompting additional letter correspondence on March 26, 2020 (*see* Ex. 6), and a lead/local meet and confer the next day. During that meet and confer, Canon stated that it would provide

---

[3] Canon's original infringement contentions provided claims charts for only the 55R617 product.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 4**

supplemental infringement contentions to address the identified issues. Canon provided those supplemental infringement contentions on April 8, 2020. *See* Mot., Exs. C-H. However, instead of addressing the deficiencies, Canon's proposed supplemental contentions include ***30 new claim charts***, for a total of 35 charts. *Compare* Mot., Ex. B *with* Mot., Exs. D-H. These new charts are directed at six newly charted representative products (from six different accused model lines) that Canon alleges only "further demonstrate" that the single purported representative product from the original contentions, the 55R617, is representative of all accused products. *See* Mot. at n.6. Defendants' review also revealed that most of the identified deficiencies from the original charts remained unresolved, and instead were multiplied throughout the new charts. *See* Ex. 7. And in instances where Canon did insert citations to production documents, they still fell short of Patent Rule 3-1. *See id.* at 3-4. Subsequently, on April 21, 2020, the day this motion was filed, Canon further amended the '130 patent claim charts to delete the identical photograph identified in December. *See* Mot. at 6, n.8.

## II. CANON'S REQUEST FOR LEAVE TO SERVE SUPPLEMENTAL CONTENTIONS LACKS GOOD CAUSE

Canon's untimely proposed supplemental infringement contentions add new theories that alter fundamental aspects of the case—to Defendants' detriment—mere weeks from the conclusion of expert and fact discovery. With its proposed P.R. 3-1(f) amendment, Canon now seeks to rely on its own practicing products for any purpose beneficial to it. With its proposed P.R. 3-1(c) claim chart supplements, Canon introduces thirty new "representative" claim charts covering six newly charted products—expanding the previous five claim charts to a total of thirty-five—that serve no purpose other than to potentially open new infringement possibilities for Canon. These proposed amendments are too late and prejudicial to Defendants—there is no good cause. *Cf. Packet Intelligence LLC, v. NetScout Sys., Inc.*, No. 2:16-CV-230-JRG, 2017 WL 2531591, at *2

(E.D. Tex. Apr. 27, 2017) (recognizing that "[c]hanging the scope of the case" in the post-*Markman* stage can "prejudice[] Defendants"). Moreover, rather than correcting the deficiencies in its original claim charts, as Canon said it would do, those deficiencies have simply been ported to and multiplied in the proposed supplemental charts. Denying Canon's motion is necessary to avoid condoning contentions that fail to comply with the minimal requirements of Rule 3-1(c).

### A. There Is No Good Cause For Amendment Of The P.R. 3-1(f) Disclosures

Canon cannot demonstrate good cause for its proposed amended P.R. 3-1(f) disclosure. There is no showing of diligence that would explain and excuse Canon's seven-month delay in identifying the ▓▓▓▓▓▓▓ as a product on which it seeks to rely; rather, there is a demonstrable lack of diligence. And the substantial prejudice to Defendants posed by Canon's proposed Rule 3-1(f) disclosure is neither outweighed by any importance of the disclosure nor mitigated by the insufficient time left in the case for necessary discovery.

#### 1. Canon Did Not Exercise Diligence

Canon concedes it "had no intention of taking a position one way or the other as to whether any of Canon's products practice the asserted patents" before Defendants' February 20, 2020 First Amended Initial Disclosures. Mot. at 7. Canon confirmed for months through its initial P.R. 3-1(f) disclosure and non-responses to interrogatories that it would not rely on its own products as allegedly embodying any asserted patent. *See* Mot. at Ex. A at 7 ("Canon does not assert that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed inventions of the Asserted Patents."); Ex. 1 at 11-12, 38-39. Only after Defendants' February 20 First Amended Initial Disclosures threatened Canon's pre-suit damages position did Canon finally "diligently investigat[e] and disclos[e]" the ▓▓▓▓▓▓▓ "as a product that likely practices the '767, '986, and '206 patents." Mot. at 10.

Disclosures under P.R. 3-1(f) are not predicated on an accused infringer first "assert[ing]

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 6**

their initial burden under *Arctic Cat*" (*see* Mot. at 10). The Rule is clear on its face:

> If a party claiming patent infringement *wishes to preserve the right to rely, for any purpose*, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party *must* identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

P.R. 3-1(f) (emphasis added). If Canon wished to rely on the ▮▮▮▮ for its own purposes, as Canon now does, P.R. 3-1(f) obligated Canon to conduct an investigation well in advance of September 6, 2019; instead, Canon waited over seven months, until April 8, 2020, to identify the ▮▮▮▮ Canon had the exclusive means and every opportunity to timely disclose the ▮▮▮▮ as all relevant information concerning it was within Canon's possession and control.

While Canon was free under Rule 3-1(f) to choose not to rely on any of its own products, Canon must live with its decision. *See Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442-JRG, 2018 WL 4501952, at *1 (E.D. Tex. July 11, 2018) (noting that the Local Rules and Docket Control Order "set forth a precise timeline for parties to disclose their infringement, invalidity, and claim construction positions"). To date, Canon has not attempted to explain its failure to meet the September 6 deadline by providing details of any pre-suit or pre-contention investigation, suggesting Canon made the decision to do no such investigation at all.

Separate and apart from Canon's choice under P.R. 3-1(f) to not rely on its own products, Defendants' interrogatories required Canon to investigate and disclose products that practiced the asserted claims or accused functionalities, regardless of whether Canon sought to rely on such products. Canon failed to do so. *E.g.*, Ex. 1 at 11 (Rog 2), 38 (Rog. 12). Had Canon done so, it would have disclosed the ▮▮▮▮ in December. *See id.* To accept Canon's argument that it may *now* disclose and rely upon the ▮▮▮▮ for its own benefit seven months after the deadline and after neglecting its discovery obligations abrogates the purpose of P.R. 3-1(f). *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) ("The

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 7**

local patent rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'")

### 2. Canon Does Not Establish the Importance of the ████

Good cause requires more than a conclusory assertion that excluded disclosure *might* be relevant. *See Adaptix, Inc. v. T-Mobile USA, Inc.*, No. 6:12CV122, 2014 WL 12639945, at *2 (E.D. Tex. Nov. 12, 2014) (Plaintiff did not "explain why, and in what capacity, its proposed amendments are critical to its cases. The importance of allowing the proposed amendments falls short for that needed at this late stage."). Here, Canon provides nothing more than vague assertions that its proposed Patent Rule 3-1(f) supplement may be relevant to the case, with no explanation how or why it is relevant or important. Canon does not explain how the ████ is "relevant to provide context for Canon's damages theory in view of its burden under *Arctic Cat*" (Mot. at 10) when the burden born by Canon under *Arctic Cat* would be "to prove the products identified do *not* practice the patented invention," or else were marked. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) (emphasis added). Canon also is unwilling or unable to articulate why the ████ "may" be relevant to "objective indicia of nonobviousness"[4] and to "Canon's overall trial theme." Mot. at 10. And if that product *is* relevant in those ways, that relevance only serves to magnify the significant change to this case—and resulting prejudice to Defendants—that would result from the amendment.

### 3. Defendants Will Suffer Substantial Prejudice

Canon's tardy attempt to disclose the ████ (and the ████) such that it may rely on it for any purpose is precisely the sort of litigation ambush that the Patent

---

[4] Notably, Canon has not disclosed the ████ in response to Defendants' interrogatory concerning secondary considerations of non-obviousness (Interrogatory No. 9). Ex. 3 at 27-33.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 8**

Rules—and this Court's discovery rules—are intended to avoid. *See Computer Acceleration*, 503 F. Supp. 2d at 822. By now asserting that it practices its own products, Canon fundamentally changes the posture of this case, with insufficient time left in the case schedule for Defendants to conduct needed responsive discovery.

This shift in litigation positon opens up new and expansive categories of discovery that have yet to be fully explored. Discovery into the sales revenue, costs, profits, and other financial data of the ▇ and ▇ as well as other comparable Canon ▇ products, must now be taken to develop positions on the commercial success of the ▇ products as it relates to non-obviousness, as well as to develop damages positions concerning the value of the patented inventions. Advertisements, marketing studies, consumer surveys, and other documents showing how customers use the ▇ and ▇ and whether they use or even care about the patented features are likewise highly pertinent to non-obviousness and damages. So too are development documents concerning the ▇ and ▇ which may show whether alternatives to the patented features were considered and what they were, among other things. Additionally, publicly available information reveals that the ▇ was demonstrated (or at least was scheduled to be demonstrated) at a trade show in Las Vegas in mid June 2008.[5] This raises patent validity questions, as the Las Vegas trade show occurred less than one month from the foreign priority date (May 29, 2008) and less than three months from the § 102(b) statutory bar date (March 24, 2008) of the '767, '986, and '206 patents.

In addition to document discovery, depositions will be necessary to uncover critical facts. Defendants immediately noticed one deposition, of ▇ just two days after Canon disclosed the ▇ (Ex. 8) based on documents that suggest ▇ was involved

---

[5] Ex. 9 ▇

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 9**

in development of the ▓▓ Canon's late disclosure of the ▓▓ and ▓▓▓▓▓ has already had a prejudicial effect on Defendants in that it is uncertain when and where ▓▓▓▓▓'s deposition will proceed. The deposition was tentatively scheduled to take place at the United States consulate in Osaka on May 29,[6] but Japan just recently extended its state of emergency through the end of May, during which the Osaka consulate is likely to remain closed for depositions. To avoid this, and to comply with this Court's standing order,[7] Defendants have repeatedly requested that Canon make ▓▓▓▓▓ available for remote deposition from a location that allows for that.[8] Canon has repeatedly declined.[9]

▓▓▓▓▓'s deposition will not be the only deposition required by Canon's late disclosure of the ▓▓▓▓▓. As Canon's proposed P.R. 3-1(f) amendment would broadly allow Canon to rely on the ▓▓▓▓▓ "for any purpose," it will be necessary to conduct depositions of witnesses with knowledge of at least the ▓▓▓s and ▓▓▓▓▓ development, sales, and marketing. These witnesses will be identified through Canon's forthcoming document productions and designation of 30(b)(6) witnesses, and likely will hail from at least Canon and Canon's subsidiary, Canon USA, Inc. And while Defendants' pre-existing Rule 30(b)(6) notice to Canon, served on February 5, 2020, contains several topics that may be applicable to the issue of practicing products,[10] a second Rule 30(b)(6) notice specifically addressing the ▓▓▓ and ▓▓▓

---

[6] While Defendants would prefer to take ▓▓▓▓▓ deposition before May 29, the Osaka consulate requires a Court order permitting the deposition to proceed and six weeks' notice for scheduling.

[7] April 20, 2020 Standing Order Regarding Pretrial Procedures in Civil Cases Assigned to Chief District Judge Rodney Gilstrap During the Present COVID-19 Pandemic at ¶ 16 ("There will be no in-person depositions conducted during the pandemic.")

[8] Remote depositions are not permitted in Japan.

[9] In their response to Defendants' most recent request for remote depositions, counsel for Canon stated that "we hope to speak to our clients as soon as possible on this topic," but likely not until later this week due to the Golden Week national holiday in Japan. Ex. 10 (5/5/20 email from J. Pade to A. Radsch).

[10] Notably, despite having served the 30(b)(6) notice three months ago, Canon has yet to designate any witnesses for any of the deposition topics.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 10**

███ will be necessary.[11]

Had Canon not chosen to forego conducting an investigation into practicing products leading up to the Rule 3-1(f) disclosure deadline, or ignore its obligations to investigate in response to Defendants' interrogatories, Defendants would have had months, rather than weeks, for needed discovery. *Cf. Packet Intelligence,* 2017 WL 2531591, at *2 (recognizing that two weeks for discovery into a new product "would not allow time to address the inevitable discovery disputes that such production would almost certainly entail"). Opening expert reports are due on May 25, rebuttal reports are due June 15, and both expert and fact discovery closes on June 22. It is not conceivable that this schedule will provide sufficient time for Defendants to complete discovery on the ███. This is especially true given Canon's representation that it is not possible to search relevant document repositories until COVID-19 restrictions are eased,[12] and the difficulties to this point in scheduling any Canon witnesses for deposition (no depositions have been taken) despite having first served individual and 30(b)(6) deposition notices on January 17, 2020.

### 4. A Continuance Is Necessary If Defendants Are Allowed to Serve Supplemental Infringement Contentions

As suggested above, continuance is the only available means to ameliorate the prejudice to Defendants should the Court allow Canon's proposed Rule 3-1(f) amendment; however, Canon has resisted any change in the trial date and the Court has indicated that it is not presently of the mind to move the trial date.[13] Further, it is not presently possible to estimate with reasonable certainty the length of continuance needed to sufficiently mitigate the prejudice to Defendants

---

[11] Because they practice the asserted claims, details concerning the components and operation of the ███ and ███ might also have had relevance to claim construction. But under the current case schedule, and the recently issued *Markman* order, that bell cannot be easily un-rung.

[12] Ex. 11 (4/22/20 email from D. Okano to S. Taylor)),

[13] *See* April 23, 2020 Hrg. Tran at 10:18-20 ("And I'm not prepared to extend the trial date past the September 14th setting right now.").

given the questions surrounding Canon's witness availability and Canon's inability to search for documents under present COVID-19 restrictions.

### B. There Is No Good Cause For The Supplemental P.R. 3-1(c) Claim Charts

Separate and apart from the attempted shift in litigation theory posed by Canon's P.R. 3-1(f) amendment, Canon's proposed supplemental P.R. 3-1(c) claim charts—introducing 30 new claim charts covering six previously uncharted products—serve no identifiable purpose other than to open the door for Canon to pursue different representative product theories. Moreover, the deficiencies in Canon's five original claim charts that rendered the charts non-compliant with P.R. 3-1 remain largely intact in Canon's proposed supplemental claim charts, if not multiplied by having been carried over into 30 new claim charts. For most of the same reasons that Canon's original contentions failed to comply with Rule 3-1(c), so too do Canon's supplemental claim charts.[14] Canon's claim charts are insufficient under P.R. 3-1 and its motion should be denied.

#### 1. Canon's 30 New Claim Charts Are Belated and Futile

There is no reason for Canon to have waited until April 8, 2020, mere weeks before the April 27 deadline (at the time) for fact discovery and opening expert reports, to proffer 30 new claim charts covering six new accused products across the five asserted patents. Beginning months ago, Defendants have repeatedly put Canon on notice that its reliance on a representative product theory of infringement was incomplete. Canon's 30 new charts do nothing to explain the technical and functional identity of the alleged representative product (55R617) to all accused products. *UltimatePointer, LLC v. Nintendo, Co.,* No. 6:11-CV-496, 2013 WL 12140173, at *3 (E.D. Tex. May 28, 2013). Such explanation is required to meet P.R. 3-1(c). *Id.*

Canon asserts that its new claim charts—comprised of newly charted representative

---

[14] Canon alludes to a broken promise by Defendants to not oppose the instant motion. Mot. at 1, 4. Such promise was predicated on Canon fully addressing the deficiencies in its contentions which it did not do.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 12**

products from six separate accused product model lines—only confirms Canon's earlier contention that the lone 55R617 product is representative of all accused products. *See* Mot. at 5, n.6. There is no support for Canon's position, nor are these new claim charts consequential to the issue of whether the 55R617 is indeed representative of all accused products. Canon "must provide an explanation of the technical and functional identity of the products represented." *UltimatePointer,* 2013 WL 12140173, at *3. The proper analysis is whether Canon's purported representative accused product, the 55R617 is functionally and technically identical to every accused product, not whether the 55R617 is functionally and technically identical to other purported representative products for sub-groups of the accused products. In this respect, the 30 new claim charts are irrelevant.

Indeed, only "*if* separate charts would be *identical* for each product" may Canon use a single chart for multiple products. *Id.* at *3 (emphasis original). As Defendants explained to Canon in January, such is not the case here. Ex. 5 at 1-2. For example, Canon's contentions rely, in part, on Ethernet connectivity. *E.g.*, Mot., Ex. D, App'x 1-a at 14 (asserting that a 3-series product (43S325) has a receiving unit for receiving internet content via Ethernet cable and/or Wi-Fi); Mot., Ex. E, App'x 1-a at 11 (asserting that a 3-series product (43S325) is capable of using Ethernet cable to connect to an external device). The accused 3-series and 4-series products (comprising 40 separate accused products) do not have an Ethernet port, while the other accused products do. Canon's theory for the 3-series and 4-series products cannot be identical for the other accused products. And the 55R617 cannot be representative.

Canon's claim chart amendments attempt to establish functional identity of the accused products by citing to evidence that the Roku OS software is the same across all hardware offerings. *See* Mot. at n.5. While this may support a theory that the software operations of the accused

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 13**

products may be the same, the asserted claims—especially the apparatus claims—are directed to a mix of hardware and software. There can be no functional and technical identity when Canon's contentions are based on hardware and related functionality not present on all devices.

### 2. Canon's New Claim Charts Are An Impermissible New Theory

Despite Canon's assertion that the 30 newly generated claim charts merely "further demonstrate the appropriateness of using 55R617 as a representative product," that assertion is both counterfactual (*see infra.*) and non-limiting. Canon has not stipulated that it would proceed with only one representative product at trial, in accord with its original contentions, should the Court grant its motion. If the Court approves the supplemental contentions, Canon may, and likely will, rely on the seven representative products as a shield for its inability to demonstrate technical and functional identity of the 55R617 across all accused products. Introduction of such new infringement theories—seven months late—is overly prejudicial and lacks justification.

### 3. Canon's Claim Charts Do Not Comply With P.R. 3-1(c)

As to the substance of the claim charts, Canon's supplemental contentions fail to address most of the issues with the original contentions, such that the amended claim charts are likewise non-compliant with P.R. 3-1. Some examples:

For the '130 patent, Canon did not provide any additional context how the accused products "periodically repeat accessing of a URL" to retrieve and buffer streaming content when the product is turned off or switched to traditional broadcast television. A network traffic analyzer can be used to affirmatively show that the accused products do ***not*** perform the claimed functionality, and the bases for Canon's contentions are otherwise based on misinterpretation of the operation of the accused devices. *See generally* Mot., Ex. D (Sling TV contentions); *see also* Ex. 4 at 1-4.

Canon still has not explained what facts support the "information and belief" behind many of its contentions. Such is true, for example, for the "USB imaging class" and "USB mass storage

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 14**

class" limitations of the '767 and '986 patents, where Canon merely parrots the claim language. *E.g.*, Mot., Ex. E at App'x 2 through 2-f (claim elements 3.a, 4.a); Ex. F at App'x 3 through 3-f (claim elements 4.a, 5.a). This is not enough for P.R. 3-1. *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) ("PICs providing vague, conclusory language or simply mimicking the language of the claims when identifying infringement fail to comply. . . .").

In other instances, Canon's contentions remain so vague that it is impossible to discern what aspect of the accused products is being mapping to the asserted claim element. *See Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961-RWS-JDL, 2017 WL 1927749, at *2 (E.D. Tex. May 10, 2017) ("[Plaintiff] must be clear as to what aspect of the accused products satisfies each key claim term."). For example, claim 7 of the '206 patent requires a display control unit that "varies a period of time from the disconnection" of an external device "to the stopping of the display" based on whether the disconnection was physical or logical. In the eight operational examples provided (utilizing USB, HDMI, wireless router, and a smart phone), Canon fails to identify for each example whether the disconnection is physical or logical, and the period of time between disconnection and stopping of the display, much less how that time varies based on the type of disconnection. *E.g.*, Mot., Ex. G at App'x 4 through 4-f (claim element 7.c).

Even where Canon has amended its claim charts to provide additional details and technical document citations, Canon's efforts fall short of what is required by Rule 3-1. For most, if not all claim elements including "unit" terms, Canon's amendments provide only a broad description of various hardware components, somewhere in which the claimed unit term can be found. *E.g.*, Mot., Ex. H, App'x 5 through 5-f (claim elements 7.a, 7.b, 7.c); *see also* Ex. 7 at 3-4.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Canon's motion for leave to serve supplemental infringement contentions.

**DEFENDANTS' OPPOSITION TO MOTION TO SUPPLEMENT CONTENTIONS - Page 15**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

| | |
|---|---|
| May 6, 2020 | Respectfully submitted, |

/s/ *Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
Cole Alan Riddell
Texas Bar No. 24105423
Kyle Randall Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: criddell@haltomdoan.com
Email: kakin@haltomdoan.com

Andrew N. Thomases
(CA Bar No. 177339)
Andrew T. Radsch
(CA Bar No. 303665)
ROPES & GRAY LLP
1900 University Avenue
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
Facsimile: (650) 617-4090
Email: andrew.thomases@ropesgray.com
Email: andrew.radsch@ropesgray.com

Scott S. Taylor (MA Bar No. 692689)
ROPES & GRAY LLP
Prudential Center
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
Email: scott.taylor@ropesgray.com



Lance W. Shapiro (NY Bar 5397955)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: lance.shapiro@ropesgray.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Pursuant to Local Rule CV-5(c), all counsel of record were served a true and correct copy of the foregoing document by electronic mail on this the 6th day of May, 2020.

*/s/ Jennifer H. Doan*
Jennifer H. Doan